UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES SCHAEFER, JR., on behalf of himself and
all others similarly situated,

Civil No. 14-cv-6622-PGG

*Plaintiff,*

- against -

M&T BANK CORPORATION,

*Defendant.*

---

## M&T BANK'S MEMORANDUM OF LAW
## IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR
## "CONDITIONAL CERTIFICATION" AND COURT-AUTHORIZED NOTICE

**HODGSON RUSS LLP**
*Attorneys for M&T Bank Corporation*
Robert J. Lane, Jr.
Robert J. Fluskey, Jr.
Sarah N. Miller
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ........................................................................................1

      1.     Schaefer and the other declarants are
            not similarly situated to the collective. ......................................................2

      2.     Schaefer and the other declarants have not
            presented evidence to support the scope
            of the collective, and they cannot serve as adequate representatives. .........3

      3.     Schaefer has failed to reasonably identify the scope of the
            collective and the jobs he seeks to include. .................................................4

      4.     Schaefer's proposed notice is contrary to the law. ......................................5

PROCEDURAL HISTORY.............................................................................................6

ARGUMENT ..................................................................................................................7

I.      SCHAEFER AND THE OTHER DECLARANTS ARE
       NOT SIMILARLY SITUATED TO THE PUTATIVE COLLECTIVE............................9

     A.     The Technology Infrastructure Department was diverse and
          included highly specialized groups; the job titles at issue are generic. ..................9

     B.     Schaefer seeks to include disparate
          jobs from all segments of the
          Technology Infrastructure Department.................................................................12

II.     SCHAEFER HAS NOT PRESENTED EVIDENCE
      TO SATISFY HIS BURDEN, AND HE AND THE
      OTHER DECLARANTS ARE NOT PROPER REPRESENTATIVES..........................14

     A.     Schaefer's assembly-line declarations are patently insufficient. ..........................14

     B.     Schaefer and the other declarants do not
          possess knowledge of the job duties of the collective. ..........................................16

     C.     Schaefer and the other declarants did not
          present evidence of overtime hours worked or
          a "common policy" applied to members of the collective.....................................17

     D.     Lacking an evidentiary basis, the declarants
          make statements that are demonstrably incorrect. .................................................18

i

## <u>TABLE OF CONTENTS - cont'd</u>

<u>PAGE</u>

E.     Schaefer's submissions do not support nationwide notice. ...................................20

III.   SCHAEFER HAS FAILED TO REASONABLY IDENTIFY THE COLLECTIVE.......20

IV.   SCHAEFER'S PROPOSED NOTICE IS CONTRARY TO THE LAW.........................24

CONCLUSION.................................................................................................................................25

# TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

*Adair v. Wisconsin Bell, Inc.*,
    2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008)........................................................7

*Ali v. New York City Health and Hosps. Corp.*,
    2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013) ......................................8, 15, 17, 18

*Blake v. Hewlett-Packard Co.*,
    2013 U.S. Dist. LEXIS 98690 (S.D. Tex. July 11, 2013)..................................................13, 20

*Diaz v. Elects. Boutique of Am., Inc.*,
    2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005) ......................................................7

*Diaz v. S&H Bondi's Dep't Store, Inc.*,
    2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. Jan. 18, 2012) ........................................................24

*Eng-Hatcher v. Sprint Nextel Corp.*,
    2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009)...................................................15

*Fasanelli v. Heartland Brewery, Inc.*,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007)..................................................................................25

*Fernandez v. Wells Fargo Bank*,
    2013 U.S. Dist. LEXIS 124692 (S.D.N.Y. Aug. 28, 2013)...................................8, 16, 18, 20

*Flores v. Osaka Health Spa, Inc.*,
    2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006) ...............................................15, 23

*Fraticelli v. MSG Holdings, L.P.*,
    2014 U.S. Dist. LEXIS 63167 (S.D.N.Y. May 7, 2014) .......................................................12

*Guillen v. Marshalls of MA, Inc.*,
    750 F. Supp. 2d 469 (S.D.N.Y. 2010)...............................................................................8, 20

*Guo v. Tommy's Sushi Inc.*,
    2014 U.S. Dist. LEXIS 147981 (S.D.N.Y. Oct. 16, 2014)....................................................24

*Hendricks v. J.P. Morgan Chase Bank, N.A.*,
    263 F.R.D. 78 (D. Conn. 2009)............................................................................................16

*Hoffmann-LaRoche, Inc. v. Sperling*,
    493 U.S. 165 (1989)...............................................................................................................7

## TABLE OF AUTHORITIES - cont'd

PAGE

*Indergit v. Rite Aid Corp.*,
2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 16, 2010) .......................................................24

*Khan v. Airport Mgmt. Servs., LLC*,
2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011)....................................................16

*Lin v. Benihana Nat'l Corp.*,
755 F. Supp. 2d 504 (S.D.N.Y 2010)..........................................................................................8

*Maldonado v. Arcadia Bus. Corp.*,
2015 U.S. Dist. LEXIS 54523 (E.D.N.Y. Apr. 24, 2015) .......................................................24

*Marmolejos v. Lae Ties & Rims, Inc.*,
2013 U.S. Dist. LEXIS 176438 (S.D.N.Y. May 1, 2013)...........................................................8

*McGlone v. Contract Callers, Inc.*,
2012 U.S. Dist. LEXIS 49702 (S.D.N.Y. Apr. 6, 2012)......................................................8, 20

*Mendoza v. Casa De Cambio Delgado, Inc.*,
2008 U.S. Dist. LEXIS 27519 (S.D.N.Y. April 7, 2008) ...................................................8, 14

*Mike v. Safeco Ins. Co. of Am.*,
274 F. Supp. 2d 216 (D. Conn. 2003)..........................................................................................7

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)..................................................................................7, 8, 14, 17

*Palacios v. Boehringer Ingelheim Pharms., Inc.*,
2011 U.S. Dist. LEXIS 92002 (S.D. Fla. Apr. 18, 2011) .......................................................14

*Romero v. H.B. Auto. Group, Inc.*,
2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) ...............................................8, 15, 16

*Rudd v. T.L. Cannon Corp.*,
2011 U.S. Dist. LEXIS 21061 (S.D.N.Y. Jan. 4, 2011) ...........................................................7

*Sanchez v. JMP Ventures, LLC*,
2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. Jan. 27, 2014) .......................................................15

*Silva v. Calle 8, LLC*,
2013 U.S. Dist. LEXIS 171696 (E.D.N.Y. Dec. 5, 2013) .......................................................23

*Silverman v. Smithkline Beecham Corp.*,
2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007)........................................................14

## <u>TABLE OF AUTHORITIES - cont'd</u>

<u>PAGE</u>

*Sutton-Price v. Daugherty Sys., Inc.*,
  2013 U.S. Dist. LEXIS 91866 (E.D. Mo. July 1, 2013) ..........................................................13

*Vargas v. HSBC Bank USA, N.A.*,
  2012 U.S. Dist. LEXIS 113993 (S.D.N.Y. Aug. 9, 2012) ...................................................8, 12

*Vasquez v. Vitamin Shoppe Indus.*,
  2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. July 11, 2011) .......................................................20

*Villarreal v. St. Luke's Episcopal Hosp.*,
  751 F. Supp. 2d 902 (S.D. Tex. 2010) ...................................................................................13

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
  767 F. Supp. 2d 445 (S.D.N.Y. 2011) ...................................................................................24

## FEDERAL STATUTES

FLSA ....................................................................................3, 5, 6, 7, 8, 12, 16, 17, 22, 24

§ 216(b) of the FLSA ...........................................................................................1, 6, 7, 14, 18

Manufacturers and Traders Trust Company, improperly named in the complaint as M&T Bank Corporation ("M&T Bank"), submits this Memorandum of Law in opposition to the "Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act" submitted by plaintiff James Schaefer, Jr. ("Schaefer" or the "plaintiff").

## PRELIMINARY STATEMENT

This Fair Labor Standards Act ("FLSA") case is predicated upon a mischaracterization of job duties urged by a former information technology ("IT") professional of M&T Bank.  In challenging his exempt classification, Mr. Schaefer claims that he performed duties similar to a help desk technician.  Nothing could be further from the truth.  Schaefer, who attained the rank of "Banking Officer" in 2007, performed complex systems analysis and testing and helped design, implement, and maintain messaging systems.  The other IT professionals who have submitted declarations to this Court —William Collier, Joseph Spinella, and Mitchell Roberts (the "declarants") — parrot Schaefer's inaccurate description of job duties with conclusory (and nearly verbatim) terminology.

But the time for a merits analysis of exemptions has not yet arrived.  In the motion before the Court, Schaefer seeks an order "conditionally certifying" and authorizing notice for a collective under Section 216(b) of the FLSA.  Schaefer's motion seeks to create the impression that he need not satisfy *any* standard or burden to succeed.  This is not an accurate representation of the law.  While Schaefer's burden at the conditional certification/notice stage is comparatively modest, he still must present evidence to establish that he is "similarly situated" to the individuals he seeks to include in the collective and that the members of the collective are

"victims" of a common policy.  Schaefer has not — and cannot — satisfy this burden.  The Court

should deny his motion for at least three independent reasons.

      **1.**      **Schaefer and the other declarants are**
                            <u>**not similarly situated to the collective.**</u>

      Schaefer appears to ask the Court to authorize notice to each current or former M&T

Bank employee who was assigned the title of Network Computing Analyst I, Network

Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, or Senior Staff

Specialist and who worked within M&T Bank's Technology Infrastructure Department, which

was[1] a Department in M&T Bank's IT group.  Contrary to the conclusions set forth in Schaefer's

assembly-line declarations, this collective would encompass individuals who performed different

jobs across several different sub-departments, groups, and teams.

      During much of the relevant period, M&T Bank's Technology Infrastructure Department

was comprised of at least four sub-departments:  Network Computing; IT Operations;

Information Security; and Telecommunications.  Quinn Decl.[2] ¶ 13.  These sub-departments

themselves consisted of several groups and teams, each with their own functions and leadership.

"Network Computing Analyst I," "Network Computing Analyst II," "Senior Network

Computing Analyst," "Staff Specialist," and "Senior Staff Specialist" were broadly tailored

generic titles used across the various sub-departments, groups, and teams.  *Id.* ¶¶ 13-34.  The

jobs of the IT professionals holding these titles differed fundamentally depending on the

sub-department, group, and team for which they worked.  In addition, the level of independent

---

[1]      M&T Bank's IT group commenced a restructuring process in June/July 2014, which is
discussed below in Section IA of the Argument Section.

[2]      The "Quinn Decl." refers to the accompanying Declaration of Wendy Quinn.

discretion and judgment changed substantially as one progressed from Analyst I, to Network

Computing Analyst II, to Senior Network Computing Analyst, to Staff Specialist, and to Senior

Staff Specialist.  *Id.* ¶ 5.

Schaefer is asking the Court to include in a FLSA collective IT professionals who worked

on messaging systems and email, along with IT professionals who worked on server architecture,

along with IT professionals who worked with security protocols, along with IT professionals

who worked with telephone systems — all at varying levels of discretion.  These different jobs

cannot be analyzed as a unit.

> **2.    Schaefer and the other declarants have not
> presented evidence to support the scope
> <u>of the collective, and they cannot serve as adequate representatives.</u>**

During the FLSA look-back period, none of the declarants (including Schaefer) worked

in any sub-department of the Technology Infrastructure Department other than Network

Computing.  Quinn Decl. ¶¶ 40-43; Schaefer Decl. ¶ 3; Collier Decl. ¶ 3; Spinella Decl. ¶ 3;

Roberts Decl. ¶ 3.  None of the declarants ever worked in the Information Security or

Telecommunications sub-departments — at any time.  Nevertheless, Schaefer and the other

declarants purport to know that their job duties were "essentially the same" as all Network

Computing Analysts and Staff Specialists across all sub-departments of the Technology

Infrastructure Department.  They cannot state such conclusions on personal knowledge.  They

cannot even accurately speculate on the point.

Lacking an evidentiary basis, the declarants overreach and present statements to the

Court that are demonstrably incorrect.  For example, in an apparent attempt to mischaracterize

the Technology Infrastructure Department as one monolithic group, Schaefer claims that his

"bosses" were Matthew Speare, Jeffrey Barbeau, and Bryan Clements.  Schaefer Decl. ¶ 14.

3

This statement is misleading at best.  Speare and Barbeau served as leaders of the entire Infrastructure Department.  Clements ran the entire Network Computing sub-department.  None of the declarants (including Schaefer) ever reported directly to Speare, Barbeau, or Clements.  Quinn Decl. ¶¶ 36-37. In an apparent effort to prove "common policy" with respect to overtime hours, Schaefer swears that he was never required to record the hours that he worked.  Schaefer Decl. ¶ 6. This is also untrue.  Schaefer was required to recorded hours in a system referred to as "RMT/Artemis," a practice that he must recall.  Quinn Decl. ¶¶ 50-51.  M&T Bank even produced information on this system in discovery.

### 3.    Schaefer has failed to reasonably identify the scope of thecollective and the jobs he seeks to include.

In his Complaint, Schaefer vaguely referred to the putative collective as consisting of "Staff Specialists, Analysts and similar employees."  Complaint ¶ 1.  In response to M&T Bank's interrogatories, Schaefer refused to provide any meaningful detail.  Even now, Schaefer's motion papers are internally inconsistent and leave M&T Bank guessing as to the precise scope of the putative collective.

For example, Schaefer's brief, and the declarations of Schaefer, Collier, and Spinella, ask the Court to authorize notice for all employees who held the title of Network Computing Analyst I, Network Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, or Senior Staff Specialist and who worked in the Technology Infrastructure Department.  Schaefer Decl. ¶ 15; Spinella Decl. ¶ 15; Collier Decl. ¶ 15.  But the declaration of Roberts also asks the Court to authorize notice for Network Computing Analysts and Staff Specialists who worked in Central Technology — which was an entirely different Department from Infrastructure.  Roberts Decl. ¶ 15.  Does Schaefer's putative collective encompass Central Technology?  As another

example, Schaefer's brief requests authorization of notice to Network Computing Analysts and

Staff Specialists who worked across all sub-departments of the Technology Infrastructure

Department.  But Schaefer has attached organizational charts for only one of the sub-departments

— Network Computing.  Interestingly, this is the only sub-department in which any of the

declarants worked during the FLSA look-back period.  Does Schaefer's putative collective

encompass individuals who worked in sub-departments of the Technology Infrastructure

Department other than Network Computing?  Furthermore, Schaefer's proposed notice is

directed to current members of the Technology Infrastructure Department.  But as a result of

restructuring, "Technology Infrastructure" no longer exists as a Department.

M&T Bank should not be required to define the collective for Schaefer, and the Court

should not impose on M&T Bank the responsibility of issuing collective action notices when

Schaefer has been unable to reasonably identify the relevant job titles and sub-departments at

issue.

### 4.    <u>Schaefer's proposed notice is contrary to the law.</u>

If the Court determines that Court-authorized notice is warranted, it should

nevertheless reject the form notice proffered by Schaefer because it is contrary to the law.  First,

the look-back period covered by Schaefer's notice — August 19, 2011, which is three years

before he filed his Complaint — is too long.  The FLSA look-back period should be measured

from the date of the Court's order on the motion for Court-authorized notice, not from the date of

the Complaint.  Schaefer presents no evidence that would warrant equitable tolling, which is

available only in "rare and exceptional circumstances."  And even if equitable tolling applied, the

statute would be tolled from the date of Schaefer's motion, not from the date of his Complaint.

Schaefer's proposed 90-day opt-in period is also too long.  Courts in this District routinely set a 60-day opt-in period.  M&T Bank should not be required to produce any of the private and personal information requested by Schaefer on the members of the collective, other than mailing addresses and dates of employment.  Finally, M&T Bank should not be required to send notices to the personal email accounts of members of the putative collective, as it does not possess that information.

## **PROCEDURAL HISTORY**

Schaefer filed this case on August 19, 2014, seeking to recover overtime wages under the FLSA and New York Labor Law ("NYLL").  Schaefer alleges that M&T Bank improperly classified him and other similarly situated employees as exempt from overtime requirements in violation of the FLSA and NYLL.  Docket No. 1 [Complaint].  M&T Bank answered the complaint on September 23, 2014.  Docket No. 9 [Answer].  In addition to Schaefer, four other individuals have filed written consents to opt-in to this action.

Following a Rule 26(f) conference, the parties conducted discovery on the parameters of the putative collective.  After this initial phase of discovery, Schaefer filed this motion for "conditional certification" and court-authorized notice under Section 216(b) of the FLSA (29 U.S.C. § 216(b)).  Schaefer's motion appears to seek Court-authorized notice for all current and former M&T Bank employees, nationwide, who held the job titles of Network Computing Analyst I, Network Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, or Senior Staff Specialist in M&T Bank's Technology Infrastructure Department between August 19, 2011 and the present, although as discussed above (and further below in Section III), there is ambiguity on this point.  *See* Pl. Memo. at 1, 22.

6

## ARGUMENT

District Courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).  In determining whether to issue court-authorized notice, courts must be "mindful of the potential burdens associated with defending an FLSA claim involving a large and broadly defined collective group of plaintiffs." *Rudd v. T.L. Cannon Corp.*, 2011 U.S. Dist. LEXIS 21061,  at *17 (S.D.N.Y. Jan. 4, 2011) (citing *Adair v. Wisconsin Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008)).  After all, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action." *Adair*, 2008 U.S. Dist. LEXIS 68942, at *9.

To justify notice, and before subjecting an employer to the burdens of a collective action, plaintiffs must demonstrate that they are "'similarly situated' to the members of the collective and that they "together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *see Diaz v. Elects. Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382, at *10 (W.D.N.Y. Oct. 17, 2005).  "In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case." *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).

Although Schaefer repeatedly describes his burden as "low," it "is not non-existent and the factual showing, even if modest, must still be based on some substance" and not mere

"unsupported allegations." *Myers*, 624 F.3d at 555.[3] "It is axiomatic that, even at this preliminary stage, the Court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." *Ali v. New York City Health and Hosps. Corp.*, 2013 U.S. Dist. LEXIS 44091, at *6 (S.D.N.Y. Mar. 27, 2013) (quoting *Jenkins v. TJX Companies, Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)). Accordingly, the plaintiffs must make a showing that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions'. . . who are classified as exempt pursuant to a common policy or scheme." *Myers*, 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)).

Courts in this Circuit do not hesitate to deny conditional certification when plaintiffs fail to proffer "'substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." *Romero*, 2012 U.S. Dist. LEXIS 61151, at *23-24 (quoting *Davis v. Abercrombie & Fitch Co.*, 2008 U.S. Dist. LEXIS 86577 (S.D.N.Y. Oct. 22, 2008)); *see, e.g.*, *Vargas v. HSBC Bank USA, N.A.*, 2012 U.S. Dist. LEXIS 113993 (S.D.N.Y. Aug. 9, 2012); *Fernandez v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 124692 (S.D.N.Y. Aug. 28, 2013); *Ali*, 2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013); *Guillen*, 750 F. Supp. 2d 469 (S.D.N.Y. 2010); *Marmolejos v. Lae Ties & Rims, Inc.*, 2013 U.S. Dist. LEXIS 176438 (S.D.N.Y. May 1, 2013); *Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y 2010); *Mendoza v. Casa De Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 27519 (S.D.N.Y. April 7, 2008).

---

[3]     *See Romero v. H.B. Auto. Group, Inc.*, 2012 U.S. Dist. LEXIS 61151, at *23-34, 27 (S.D.N.Y. May 1, 2012); *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010); *McGlone v. Contract Callers, Inc.*, 2012 U.S. Dist. LEXIS 49702, at *8 (S.D.N.Y. Apr. 6, 2012).

I.   **SCHAEFER AND THE OTHER DECLARANTS ARE
     <u>NOT SIMILARLY SITUATED TO THE PUTATIVE COLLECTIVE.</u>**

   A.   **The Technology Infrastructure Department was diverse
        <u>an included highly specialized groups; the job titles at issue are generic.</u>**

M&T Bank has a large, highly departmentalized IT group.[4]  Up to June/July 2014, M&T

Bank's IT group was divided into two main departments:  Technology Infrastructure and Central

Technology.  Quinn Decl. ¶¶ 8-12.

   Central Technology was primarily responsible for application design, development, and

delivery.  Quinn Decl. ¶¶ 9-10.  It appears that Schaefer does ***not*** intend to include in this case

employees from Central Technology.  With one exception (the Roberts declaration), his motion

papers limit the collective to the Technology Infrastructure Department.

   The Technology Infrastructure Department was responsible for architecting, designing,

implementing, and managing pervasive technologies used across business lines — that is,

systems used by the bank on a daily basis.  Quinn Decl. ¶ 11.  Up to June/July 2014, the

Technology Infrastructure Department included four sub-departments:  (1) Network Computing;

(2) Information Technology Operations; (3) Information Security; and (4) Telecommunications.

Within each sub-department, there were numerous groups and teams, with substantially different

functions/roles.  Quinn Decl. ¶¶ 13-32.

   **Network Computing Services**.  This sub-department was responsible for the quality and

governance of network computing technologies, enterprise messaging, and collaboration

services.  This included, among other things, the design and maintenance of the Bank's user

directory systems and messaging systems, including email.  Quinn Decl. ¶ 14.  During the

---

[4]      The details of the IT group's structure are set forth in the accompanying declaration of
         Wendy Quinn.  We provide here a summary of the structure.

relevant period, there were at least four separate groups within the Network Computing sub-department: (1) Network Computing Services; (2) End-User Computing; (3) Platform Management; and (4) Network Client Integration.  Each of these groups was broken down into teams.  Network Computing Analysts and Staff Specialists performed different job duties within each group and team.  Quinn Decl. ¶¶ 15-16.

**IT Operations**.  This sub-department was focused on core infrastructure, access, and service functions.  It was comprised of, among other things, the infrastructure command center, the network control center, network monitoring representatives, and the ATM and enterprise help desks.  Like the other sub-departments within the Infrastructure Department, IT operations was divided into various groups and teams.  Quinn Decl. ¶¶ 26-28.  The jobs performed by those holding the titles of Network Computing Analyst I, Network Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, and Senior Staff Specialist differed materially within each group and team.  *Id.*

**Information Security**.  This sub-department was responsible for preventing, detecting, and responding to events that could impact the bank's ability to provide essential services.  This group implemented and maintained systems to protect customer and corporate information from malicious threats.  Information Security was divided into various groups and teams, each with its own leadership/management, and Network Computing Analysts and Staff Specialists performed different job duties within each group and team.  Quinn Decl. ¶¶ 29-30.

**Telecommunications**.  As the name implies, this sub-department was responsible for the bank's telephonic systems and operations.  Like the other sub-departments within the Infrastructure Department, Telecommunications was divided into various groups and teams, each

10

with its own leadership/management.  Network Computing Analysts and Staff Specialists performed different job duties within each group and team.  Quinn Decl. ¶¶ 31-32.

**The Generic Job Titles**.  "Network Computing Analyst I," "Network Computing Analyst II," "Senior Network Computing Analyst," "Staff Specialist," and "Senior Staff Specialist" are broadly tailored, generic titles that were used across the various departments, sub-departments, groups, and teams of the Technology Infrastructure Department.  The jobs of Network Computing Analysts and Staff Specialists differ fundamentally across the different departments, sub-departments, groups, and teams.  Quinn Decl. ¶ 4.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) ("Significantly, the regulations make clear that these [exemption] questions should be resolved by examining the employees' actual job characteristics and duties.")

**Recent Structural Changes**.  In the summer of 2014, M&T Bank's IT group commenced a restructuring process.  There were several modifications that took place over time.  By way of example, as of today, "Technology Infrastructure" and "Central Technology" are no longer listed as "Departments."  Information Security, which was a sub-department of the former Technology Infrastructure Department (as discussed above), was moved outside of the technology area into its own group.  Quinn Decl. ¶¶ 33-34.  One of the impacts of these changes was increased specialization in certain areas.  The titles of Network Computing Analyst I, Network Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, and Senior Staff Specialist are still utilized across numerous sub-departments, groups, and teams.  The jobs of the employees who hold these titles still differ fundamentally across the various sub-departments, groups, and teams, and the level of discretion and independent judgment

11

changes substantially as one progresses from Network Computing Analyst I, to Network

Computing Analyst II, to Senior Network Computing Analyst, to Staff Specialist, and to Senior

Staff Specialist.  Quinn Decl. ¶¶ 33-34.

> **B.     Schaefer seeks to include
> disparate jobs from all segments of the
> <u>Technology Infrastructure Department.</u>**

Schaefer is asking the Court to include in a FLSA collective IT professionals who worked

on messaging systems and email, along with IT professionals who worked on server architecture,

along with IT professionals who worked with security protocols, along with IT professionals

who worked with telephone systems.  The employees holding these different job functions are

not similarly situated.  He also asks the Court to include in his collective several job titles and

grades that carry different levels of responsibility.  The complexity of work and degree of

independent discretion exercised by the employee changes substantially as one progresses from

Network Computing Analyst I, to Network Computing Analyst II, to Senior Network Computing

Analyst, to Staff Specialist, to Senior Staff Specialist.  Some Senior Staff Specialists also have

supervisory obligations over other employees.  Quinn Decl. ¶ 5.  These different job levels

cannot be examined under the FLSA as a unit.

Given the breadth and diversity of Schaefer's putative collective, the potential claims of

misclassification could never be resolved on a collective basis.  Accordingly, the Court should

deny Schaefer's request for Court-authorized notice.  *See, e.g.*, *Fraticelli v. MSG Holdings, L.P.*,

2014 U.S. Dist. LEXIS 63167, at *6 (S.D.N.Y. May 7, 2014) (denying conditional certification

because plaintiffs had not met their "low burden of showing that all MSG interns were subject to

such a common policy or plan that violated the law" and noting that potential members of the

putative collective had worked in numerous departments and performed different duties);

12

*Vargas*, 2012 U.S. Dist. LEXIS 113993, at *13-14 (S.D.N.Y. Aug. 9, 2012) ("Without reaching

the merits of Plaintiff's suit . . .  it is evident that different Fund Accountants have very different

understandings of their own job duties and spend their time on the job doing very different

things, all of which appear consistent with the broadly-worded job description which Plaintiff

alleges covers all four positions at issue.").

  Schaefer and the other declarants conclude, without explanation, that they are similarly

situated to the collective because they "performed the same or similar primary job duties related

to providing technical and trouble-shooting support to the bank," such as "installing,

maintaining, networking, and/or supporting computer hardware or software for M&T, and

responding to incident escalations from the help desk."  *See* Pl. Memo. at 16; Schaefer Decl. ¶ 7;

Collier Decl. ¶ 7; Spinella Decl. ¶ 7; Roberts Decl. ¶ 7.  But courts have refused to conditionally

certify such broadly defined collectives of "technical support workers" because "[i]t is not

enough to show that the plaintiffs and the potential opt-ins share computer-related

responsibilities in a broad sense," and "a generic statement of job functions that creates an

overbroad category is not permitted under the similarly-situated analysis."  *Sutton-Price v.*

*Daugherty Sys., Inc.*, 2013 U.S. Dist. LEXIS 91866, at *13-14 (E.D. Mo. July 1, 2013) (denying

conditional certification of a class defined as employees involved in "basic IT troubleshooting,

configuration and general consulting duties"); *Blake v. Hewlett-Packard Co.*, 2013 U.S. Dist.

LEXIS 98690 (S.D. Tex. July 11, 2013) (denying conditional certification of HP "IT Support

Specialists" because the "similarities that are identified suffer from vagueness, as the work of

'resolving tickets' is simply too general to bind the class; in other words, because such

identification alone is not determinative of exemption status, it cannot be used to establish

similarity of situation"); *cf. Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 919 (S.D. Tex. 2010) (conditionally certifying only one of five groups who worked for the hospital's Information Technology Services, since the remaining four groups each had "its own area of expertise" and thus were not similarly situated).

## II.   SCHAEFER HAS NOT PRESENTED EVIDENCE TO SATISFY HIS BURDEN, AND HE AND THE OTHER DECLARANTS ARE NOT PROPER REPRESENTATIVES.

### A.   Schaefer's assembly-line declarations are patently insufficient.

A plaintiff cannot satisfy his burden on a Section 216(b) motion by manufacturing similarity with vague generalizations and boilerplate allegations.  *See Mendoza*, 2008 U.S. Dist. LEXIS 27519, at *6; *Palacios v. Boehringer Ingelheim Pharms., Inc.*, 2011 U.S. Dist. LEXIS 92002, at *16-17 (S.D. Fla. Apr. 18, 2011) (denying plaintiffs' request for conditional certification "based on identical statements in each of their declarations that '[b]ased on my observations and experience as described, I believe that all other [pharmaceutical reps] are principally engaged in the same core work that I was . . . .'"); *Silverman v. Smithkline Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030, at *7 n.5 (C.D. Cal. Oct. 15, 2007).

Schaefer's "evidentiary showing" on this motion consists of his own declaration, declarations from three opt-ins, and mischaracterizations of position definitions and organizational charts produced by M&T Bank.  The four declarations are substantively identical, and contain the type of conclusory, unsupported allegations that are routinely found to be insufficient at the notice stage.  *See Myers*, 624 F.3d at 555 (plaintiffs cannot rely on "unsupported assertions" to satisfy their modest factual showing at the notice stage).

Schaefer, Collier, Spinella, and Roberts all claim to have an "understanding" or "belief" that all members of the putative collective share the same primary job duties, have worked over

14

40 hours per week, and have been subjected to the same practices and policies.  Schaefer Decl. ¶¶ 9-11; Spinella Decl. ¶ 9-11; Roberts Decl. ¶¶ 9-11; Collier Decl. ¶¶ 9-11.  But they submit no evidence and provide no explanation of their alleged "firsthand experience, personal observations, and conversations with other individuals who have worked at M&T."

Schaefer cannot satisfy his burden based on unexplained "knowledge and belief."  *See Romero*, 2012 U.S. Dist. LEXIS 61151, at *28.  With no detail about the "observations" and "conversations" with other employees, "the Court does not know where or when these observations or conversations occurred, which is critical in order for the Court to determine the appropriate scope of the proposed class and notice process."  *Sanchez v. JMP Ventures, LLC*, 2014 U.S. Dist. LEXIS 14980, at *5 (S.D.N.Y. Jan. 27, 2014); *see Romero*, 2012 U.S. Dist. LEXIS 61151, at *43 (denying conditional certification on grounds that "[t]here is . . . nothing in the record which could lead the Court to believe that Plaintiff was similarly situated with respect to the office staff members whom Defendants classified as exempt—the Court simply does not know what those employees do"); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262, at *11 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification where plaintiff identified five other Retail Consultants by name who worked at the same stores but provided no details about these conversations).

Similarly, "uncorroborated, anecdotal hearsay about the hours Plaintiff believes others worked," in the absence of "information about where [the others] worked or, more importantly, why they worked more than 40 hours (*i.e.*, because of a common plan or policy of Defendants)," is insufficient to warrant Court-authorized notice.  *Ali*, 2013 U.S. Dist. LEXIS 44091, at *8; *see Flores v. Osaka Health Spa, Inc.*, 2006 U.S. Dist. LEXIS 11378, at *8 (S.D.N.Y. Mar. 16, 2006)

(plaintiff's "understanding" that co-workers worked the same 12 hour shift as she did, did not provide sufficient factual information warranting conditional certification); *Khan v. Airport Mgmt. Servs., LLC*, 2011 U.S. Dist. LEXIS 133134, *10-12 (S.D.N.Y. Nov. 16, 2011).

### B.   Schaefer and the other declarants do not possess knowledge of the job duties of the collective.

Court-authorized notice is not justified where the plaintiffs lack personal knowledge and have failed to show that they are proper class members.  *See, e.g.*, *Fernandez*, 2013 U.S. Dist. LEXIS 124692, at *50 (denying conditional certification in part because "[m]uch of the evidence submitted in support of the collective action falls outside of the relevant time period . . . for FLSA purposes"); *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 87 (D. Conn. 2009) (finding plaintiffs' evidence in support of conditional certification insufficient where the sole evidence submitted were statements made by individuals who were not potential class members in the case); *Cf. Romero*, 2012 U.S. Dist. LEXIS 61151, at *41 ("Having no FLSA claim of her own as a salesperson, Plaintiff is not similarly situated to non-exempt employees, if any, who potentially have such claims.").  Schaefer and the other declarants fail on both points.

Schaefer and Collier worked on the Messaging Team.  Up to June/July 2014, the Messaging Team fell under the Network Computing Services sub-department.  Spinella worked in the Platform Management group, which was part of the Network Computing sub-department. Roberts also worked in the Network Computing sub-department (on the End-User and Messaging Teams) from 2010 to the present.  (From 2007 to 2010, he worked on the Network Control Center team, which was part of the IT operations sub-department, but that was prior to the FLSA look-back period.)  Quinn Decl. ¶¶ 39-43.

16

Thus, during the FLSA look-back period, none of the declarants worked in any sub-department of Technology Infrastructure other than Network Computing.  None of the declarants ever worked in the Information Security or Telecommunications sub-departments — at any time.  Yet despite their limited reach and exposure, these declarants claim to know the job duties of hundreds of Network Computing Analysts and Staff Specialists across every sub-department, group, and team within the Technology Infrastructure Department.

The organizational charts attached to the accompanying declaration of Wendy Quinn help to place in visual context the implausibility of the declarants' position.  Quin Decl. Exs. 1-4.  Schaefer and the other declarants were part of one narrow segment of a vast, highly departmentalized Technology Infrastructure Department.  They cannot possibly know the job duties of all other Network Computing Analysts and Staff Specialists of all groups and all ranks.

Furthermore, as their sworn statements make clear, none of the declarants worked as a Senior Staff Specialist during the FLSA look-back period.  They have no basis for seeking to include that title in the collective.

### C.    Schaefer and the other declarants did not present evidence of overtime hours worked or a "common policy" applied to members of the collective.

To warrant court-authorized notice, "[p]laintiff must demonstrate that he and the other employees are similarly situated with respect to their claim — here, that they worked more than 40 hours a week as part of a common policy or plan that violated the law."  *Ali*, 2013 U.S. Dist. LEXIS 44091, at *7; *Myers*, 624 F.3d at 555.  Schaefer appears to believe that allegations of M&T Bank's "blanket" classification policy is sufficient to meet his burden at this stage.  Pl. Memo. at 14.  That is not the law.  *See Ali*, 2013 U.S. Dist. LEXIS 44091, at *6-7 ("The mere classification of a group of employees — even a large or nationwide group — as exempt under

17

the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy,

plan, or practice that renders all putative class members as 'similarly situated' for § 216(b)

purposes.").

    Rather, to succeed on this motion, Schaefer must submit some evidence that he and other

employees are similarly situated in that they worked more than 40 hours per week.  Neither the

declarations submitted on this motion, nor Schaefer's documentary evidence, satisfies this

burden. *See Fernandez*, 2013 U.S. Dist. LEXIS 124692, at *51 (holding that plaintiffs failed to

submit any evidence of a policy to deny overtime pay where "plaintiffs' declarations omit[ed]

key details concerning the identities of speakers and participants, and even approximate dates,

when instructions allegedly were issued concerning off-the-clock work and denial of overtime").

    The declarants fail to provide any details corroborating their purported "understanding"

and "belief" that other individuals worked in excess of 40 hours per week across all

sub-departments, groups, and teams within the Technology Infrastructure Department.  Courts

have denied conditional certification based on similarly bare and conclusory allegations of a

"company-wide policy or practice."  *Ali,* 2013 U.S. Dist. LEXIS 44091, at *7-8.

    **D.    Lacking an evidentiary basis, the declarants
            make statements that are demonstrably incorrect.**

    In paragraph 14 of his declaration, Schaefer incorrectly states that his "bosses" were

Matthew Speare, Jeffrey Barbereau and Bryan Clements.  The other declarants present

essentially the same statement.  Spinella Decl. ¶ 14; Roberts Decl. ¶ 14; Collier Decl. ¶ 14. This

assertion appears to be part of an effort to create the impression that the Infrastructure

Department was one monolithic group and that Schaefer and the other declarants possess

personal knowledge about job the duties of all of those working within the group.

18

Speare and Barbereau served as leaders of the <u>entire</u> Technology Infrastructure Department, which as discussed above, consisted of numerous sub-department, groups, and teams, including not only Network Computing, but also IT Operations, Information Security, and Telecommunications.  Schaefer never reported to Speare, Barbeau, or Clements.  None of the declarants ever reported to Speare, Barbeau, or Clements.  These individuals never supervised the declarants' work and never conducted or delivered their performance evaluations.  Quinn Decl. ¶¶ 36-38.  The documents attached to Schaefer's own motion disprove the assertion.  Exhibit G includes an email from Collier to Dhana Hannibal in which Collier states, contrary to his sworn declaration, that he "work[s] for Tim Porter and Dave Campbell."

In an apparent effort to prove a "common policy" with respect to overtime hours, Schaefer claims that he was never required to record the hours that he worked and implies that the absence of hour recordation was a policy that applied across all segments of the Infrastructure Department.  Schaefer Decl. ¶ 6.  The other declarants make essentially the same statement.  Spinella Decl. ¶ 6; Collier Decl. ¶ 6; Roberts Decl. ¶ 6.  These assertions are false.  The declarants fail to inform the Court that they were required to recorded hours in a specific technology resource management tool.  For most of the relevant period, the resource management tool used by the IT group was "RMT/Artemis."  Currently, M&T Bank's IT group uses a program referred to as "Microsoft Enterprise Project Management."  These systems are used for cost recovery and resource planning.  Consistent and accurate time entry is critical.  M&T Bank even maintains a structured monitoring process with respect to time entry.  Mr. Schaefer himself regularly used RMT/Artemis to enter time.  Quinn Decl. ¶¶ 50-51.  M&T Bank even produced information and documents on that system in discovery.

19

E.   **Schaefer's submissions do not support nationwide notice.**

Courts decline nationwide notice where, as here, the plaintiff fails to submit evidence that all members of the nationwide collective are similarly situated. *See, e.g.*, *Fernandez*, 2013 U.S. Dist. LEXIS 124692, at *50-51(denying conditional certification of a nationwide collective in the absence of "timely, geographically relevant evidence 'of a common policy or plan that violated the law'"); *Guillen*, 750 F. Supp. 2d at 477.

Schaefer and the other declarants fail to identify where members of the putative collective were/are employed. Should the Court find that Schaefer has satisfied any aspect of his burden (it should not), the Court should restrict notice to New York, the only State where Schaefer and the declarants ever worked. *See Vasquez v. Vitamin Shoppe Indus.*, 2011 U.S. Dist. LEXIS 74376, at *9 (S.D.N.Y. July 11, 2011).[5]

III.   **SCHAEFER HAS FAILED TO REASONABLY IDENTIFY THE COLLECTIVE.**

In his Complaint, Schaefer vaguely referred to the individuals he sought to include in his collective as "Staff Specialists, Analysts and similar employees." Docket No. 1, at ¶ 1. The Complaint did not identify the actual titles or levels of "Analysts" or "Staff Specialists" that Schaefer intended to encompass in this case.

M&T Bank sought in discovery an explanation of the job titles that Schaefer intended to include in his collective, but Schaefer was less than forthcoming. In its first set of

---

[5]   *See also McGlone*, 867 F. Supp. 2d at 445 (denying plaintiff's motion for conditional certification of a nationwide class and granting conditional certification of a class employed by defendant in its New York Division); *Blake v. Hewlett-Packard Co.*, 2013 U.S. Dist. LEXIS 98690, at *19 (S.D. Tex. July 11, 2013) (holding that "[i]n cases involving geographically diverse locations, certification is proper only if the same corporate policy applies to all such locations" and rejecting plaintiffs' circumstantial evidence of a nationwide policy).

interrogatories, and specifically Interrogatory No. 3, M&T Bank asked Schaefer to "[i]dentify each job or job description that Schaefer alleges should be included in the 'FLSA Collective,' as that term is used in the Complaint."  Schaefer answered:  "Plaintiff objects to this Interrogatory on the basis of custody and control.  Plaintiff further objects on the grounds that this Interrogatory calls for legal conclusion, and on the basis of Local Civil Rule 33.3.  Subject to and without waiving any objections, Plaintiff responds as follows — Plaintiff was employed by Defendant under the following job titles:  Staff Specialist; and Network Analyst."  Fluskey Decl. Ex. 1.

In his first set of interrogatories, and specifically Interrogatory No. 1, Schaefer asked M&T Bank to "[i]dentify all Class Members who have worked for Defendant during the Relevant Time Period . . . ."  The interrogatories defined "Class Members" as "Staff Specialists, Analysts and other similar employees who have performed work for Defendant, and all other persons in similar positions with comparable work terms, work conditions and compensation, however titled, including Plaintiff."  Fluskey Decl. Ex. 2.  This vague, unbounded definition made it impossible for M&T Bank to compile a list of potentially relevant individuals.  In response to this interrogatory, M&T objected on several grounds, but nevertheless indicated that it would provide a list of individuals holding the positions of "Senior Network Computing Analyst" and "Staff Specialist," the two positions that Schaefer held going back to 2008. Fluskey Decl. Ex. 3.

Schaefer's counsel subsequently indicated that they wanted M&T Bank's list of potential "Class Members" to include those holding the title of Network Computing Analyst I and Network Computing Analyst II.  M&T Bank produced a new, expanded list that included these

21

titles.  This list made it abundantly clear that the following titles were captured as "Covered Job Titles":  (1) Network Computing Analyst I; (2) Network Computing Analyst II; (3) Senior Networking Computing Analyst; and (4) Staff Specialist.  The list encompassed not only the FLSA look-back period, but also a six-year look-back period for New York employees, because Schaefer defined the "Relevant Time Period" as August 19, 2008 to the present in his interrogatories and document requests.  Fluskey Decl. Ex. 3.  This list included approximately 250 individuals.  Fluskey Decl. ¶ 7.

In his brief, Schaefer states that the list produced by M&T Bank represents the collective for which he seeks certification.  Schaefer is incorrect for several reasons.  First, the list includes New York employees who may have worked outside the FLSA look-back period, but within New York's longer statutory period.  Second, the list includes individuals in the Central Technology Department — a Department that Schaefer does not include in his brief or proposed notice.  Third, the list did not include Senior Staff Specialists because Schaefer did not request that information in discovery.  Some Senior Staff Specialists have supervisory/management responsibilities in addition to IT analysis responsibilities, and none of the declarants has worked as a Senior Staff Specialist.  There is absolutely no basis to include them in the putative collective.

Even now, Schaefer's definition of the collective remains unclear.  According to his brief and proposed notice, Schaefer seeks to include in his collective employees who held the title of Network Computing Analyst I, Network Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, or Senior Staff Specialist and who worked within the Infrastructure Department.  However, Roberts' declaration states that authorized notice should also be

22

delivered to individuals who held those titles in the Central Technology Department, not just the Infrastructure Department.  Roberts Decl ¶ 15.  In his brief and proposed notice, Schaefer seeks to include these titles across all sub-departments of the Infrastructure Department.  He attaches organizational charts to his motion and implies that they present an accurate picture of the structure of the proposed collective.  But Schaefer only attached charts depicting the Network Computing Services sub-department of the Infrastructure Department.  *See* Ex. A to the Fitapelli declaration.  He has not attached the organizational charts for the three other sub-departments that he purports to include in his collective — namely, IT Operations, Information Security, and Telecommunications.  M&T Bank produced these charts in discovery, and they are attached to the accompanying Declaration of Ms. Quinn.  *See* Quinn Decl. Exs. 2-4.

Further, Schaefer's proposed notice is directed to current members of the Technology Infrastructure Department.  But as a result of restructuring, "Technology Infrastructure" no longer exists as a Department.  Quinn Decl. ¶¶ 33-34.

M&T Bank has been forced to speculate as to the nature and scope of Schaefer's collective.  Schaefer is the named plaintiff and an alleged representative.  He is obligated to identify his collective, and because he has failed to do so, his motion should be denied.  *See Flores*, 2006 U.S. Dist. LEXIS 11378, at *7 ("Where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted."); *Silva v. Calle 8, LLC*, 2013 U.S. Dist. LEXIS 171696, at *11 (E.D.N.Y. Dec. 5, 2013) (denying motion for Court-authorized notice because the plaintiff's motion did not clearly define the universe of similarly situated individuals).

**IV.**     **SCHAEFER'S PROPOSED NOTICE IS CONTRARY TO THE LAW.**

If the Court determines that Court-authorized notice is warranted, it must nevertheless reject the form notice proffered by Schaefer because it is contrary to the law in several respects.

First, the look-back period covered by Schaefer's notice — August 19, 2011, which is three years before he filed his Complaint — is too long.  The FLSA look-back period should be measured from the date of the Court's order on the motion for Court-authorized notice, not from the date of the Complaint.  *See Diaz v. S&H Bondi's Dep't Store, Inc.*, 2012 U.S. Dist. LEXIS 5683, at *22-23 (S.D.N.Y. Jan. 18, 2012) ("Notice shall be sent to potential opt-in plaintiffs who worked for Defendants in the three years preceding the date of this Order"); *Maldonado v. Arcadia Bus. Corp.*, 2015 U.S. Dist. LEXIS 54523, at *11 (E.D.N.Y. Apr. 24, 2015); *Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202, at *5 (S.D.N.Y. June 16, 2010).  On pages 19 and 22 of his brief, Schaefer asks the Court to authorize notice back to August 2008, which is contrary to his proposed notice form, and there is no basis for that request.  Schaefer presents no evidence that would warrant equitable tolling, which is available only in "rare and exceptional circumstances," such as "where a plaintiff has been prevented in some extraordinary way from exercising his rights."  *Guo v. Tommy's Sushi Inc.*, 2014 U.S. Dist. LEXIS 147981, at *14 (S.D.N.Y. Oct. 16, 2014) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)); *see Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011).  In any event, even if equitable tolling applied, the statute would be tolled from the date of Schaefer's motion, not from the date of his Complaint.

Second, Schaefer's proposed 90-day opt-in period is also too long.  Courts in this District routinely set a 60-day opt-in period.  *See Diaz*, 2012 U.S. Dist. LEXIS 5683, at *22-23 (ordering a 60-day notice period, noting that "many courts in this district have set a 60-day period," and

24

that while some courts have set 90-day opt-in periods, "such rulings have generally been on consent or where special circumstances indicate that an extended opt-in period is appropriate").

Third, M&T Bank should not be required to produce any of the private and personal information requested by Schaefer, other than mailing addresses and dates of employment.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (ordering that only the names, current or last known addresses of class members, as well as known email addresses, shall be provided to plaintiffs).  None of the other information requested by Schaefer is needed to facilitate notice.

Finally, M&T Bank should not be required to send notices to the personal email accounts of putative members of the collective, as it does not possess that information.

## CONCLUSION

For the reasons discussed above, and in the accompanying declarations, Schaefer's motion for conditional certification and Court-authorized notice should be denied in its entirety.

Dated:          May 20, 2015

**HODGSON RUSS LLP**
*Attorneys for M&T Bank Corporation*


By:     s/Rob Fluskey_____
           Robert J. Lane, Jr.
           Robert J. Fluskey, Jr.
           Sarah N. Miller
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040
716.856.4000

25

13773420v8