USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JAMES SCHAEFER, JR., on behalf of himself and all other similarly situated employees,

                Plaintiff,

- against -

M&T BANK CORPORATION,

                Defendant.

**ORDER**

14 Civ. 6622 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Plaintiff James Schaefer brings this action under the Fair Labor Standards Act ("FLSA") 29 USC § 201 et seq., and New York Labor Law, on behalf of himself and all others similarly situated, against his former employer Defendant M&T Bank Corporation, alleging that Defendant failed to pay overtime wages to Network Computing Analysts and Staff Specialists in M&T Bank's Technology Infrastructure Department nationwide. Plaintiff was employed as a Network Computing Analyst and Staff Specialist in the Technology Infrastructure Department from approximately March 2003 to October 30, 2012. He asserts that he was misclassified as an "exempt" employee, and therefore was not paid any overtime during his tenure. Plaintiff further alleges that Defendant failed to monitor and record the actual hours worked by employees in violation of the FLSA, and failed to provide employees with proper wage notices and proper wage statements in violation of the New York Labor Law. He filed this action on August 19, 2014.

Plaintiff has now filed a motion for leave to disseminate notice to the potential members of the putative FLSA collective, pursuant to 29 U.S.C. § 216(b). (Dkt. No. 31) For the reasons stated below, Plaintiff's motion will be granted.

## BACKGROUND

M&T Bank is a commercial bank based in the United States with offices in eight states and the District of Columbia. Between August 2008 and June or July of 2014, M&T Bank maintained a Technology Infrastructure Department responsible for designing, implementing, and managing the technology systems used by the bank on a daily basis. (Quinn Decl. (Dkt. No. 38) ¶¶ 2, 11) The Technology Infrastructure Department includes four sub-departments: (1) Network Computing; (2) Information Technology Operations; (3) Information Security; and (4) Telecommunications. (Id. ¶ 13) Within each sub-department, various groups and teams are responsible for different aspects of the sub-department's duties. (Id. ¶¶ 13-32) Job titles within the Technology Infrastructure Department include (1) Network Computing Analyst I; (2) Network Computing Analyst II; (3) Senior Network Computing Analyst (together, "Network Computing Analysts"); (4) Staff Specialist; and (5) Senior Staff Specialist (together, "Staff Specialists"). (Id. ¶ 4) Regardless of their job titles or sub-department, M&T Bank classified all Network Computing Analysts and Staff Specialists within the Technology Infrastructure Department as exempt employees under FLSA. (Schaefer Decl. (Dkt. No. 33) Ex. B ¶¶ 4, 9-11)

Named Plaintiff James Schaefer served as a Network Computing Analyst II, a Senior Network Computing Analyst, and a Staff Specialist within the Network Computing sub-department of the Technology Infrastructure Department. (Schaefer Decl. (Dkt. No. 33) Ex. B ¶ 2) Three other individuals who have consented to join this action and who have submitted declarations in connection with the instant motion served as Network Computing Analysts II,

Senior Network Computing Analysts, and Staff Specialists, also within the Network Computing sub-department. (Roberts Decl. (Dkt. No. 33) Ex. C ¶ 2; Spinella Decl. (Dkt. No. 33) Ex. D ¶ 2; Collier Decl. (Dkt. No. 33) Ex. E ¶ 2)

    Plaintiff alleges that Network Computing Analysts and Staff Specialists provide technical support and troubleshooting with respect to the computer systems used by M&T Bank. (Schaefer Decl. (Dkt. No. 33) Ex. B ¶ 7) Plaintiff, who was employed by M&T Bank for over nine years, states in his declaration that the job duties of Network Computing Analysts and Staff Specialists are "essentially the same." (Id.) These duties primarily involve "installing, maintaining, networking, and/or supporting computer hardware or software for M&T, and responding to incident escalations from the help desk." (Id.) Plaintiff also states that, "based on [his] personal observations and conversations," the Network Computing Analysts and Staff Specialists in other sub-departments within the Technology Infrastructure Department "performed similar job duties . . . related to providing technical and trouble-shooting support to the bank." (Id.) Plaintiff "regularly worked alongside and in conjunction with other Network Computing Analysts and Staff Specialists from different departments and teams within M&T's Technology Infrastructure group." (Id. ¶ 8)

    Plaintiff now seeks leave to disseminate notice of the instant lawsuit to members of the putative collective. (Dkt. No. 31) He has defined the putative collective as those individuals who "have been employed by M&T Bank . . . in the Technology Infrastructure [Department] as a Network Computing Analyst I, Network Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, and/or Senior Staff Specialist at any time between August 19, 2011 and the present . . . ." (Proposed Notice of Collective Action Lawsuit (Dkt. No. 33) Ex. O at 1). M&T Bank opposes the dissemination of notice to members of the putative

3

collective, arguing primarily that Plaintiff is not similarly situated to the members of the collective, that Plaintiff's proposed collective is too broad in scope, and that neither the named Plaintiff nor the individuals who have consented to join the lawsuit thus far are adequate representatives of the collective. (Def. Br. (Dkt. No. 35) at 2-4)

## DISCUSSION

I. COLLECTIVE ACTIONS AND COURT-AUTHORIZED NOTICE

A. Legal Standard

Under the FLSA, an employee may sue on behalf of himself and all other employees who are "similarly situated." 29 U.S.C. § 216(b). The FLSA permits those similarly situated employees to "opt in" to the litigation and become party plaintiffs by filing a written consent form with the court. See Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006) (citing Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005)). In contrast to the procedures for a class action under Fed. R. Civ. P. 23, "only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it." Id. (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003)).

Although Section 216(b) does not explicitly address court-authorized notice to potential opt-in plaintiffs, "it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice . . . ." Gjurovich, 282 F. Supp. 2d at 104 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) ("'[a]lthough one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the "opt-in" provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather

than prohibiting notice in an appropriate case'" (quoting Braunstein v. E. Photographic Labs., Inc., 600 F. 2d 335, 336 (2d Cir. 1978) (per curiam)) (alterations in Amendola)). Indeed, because the three-year statute of limitations for an FLSA claim begins to run as soon as a non-named plaintiff opts-in to the litigation, courts routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery process. See, e.g., Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[] to prevent erosion of claims due to the running statute of limitations . . . .").

   Typically, "a federal court authorizes notice of the litigation to employees after making a preliminary determination that the employees who will be receiving the notice are similarly situated to the plaintiff." Amendola, 558 F. Supp. 2d at 467 (citing Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). Where a plaintiff meets his or her burden to demonstrate that the proposed recipients are in fact "similarly situated," the court authorizes that notice be sent to these potential plaintiffs. Lynch, 491 F. Supp. 2d at 368-69. The potential plaintiffs may then opt-in to the lawsuit pursuant to Section 216(b) by filing a consent form with the Court. Id.

   To demonstrate that proposed recipients of notice are "similarly situated," Plaintiff need "make only a 'modest factual showing' that []he and the other putative collective action members 'were victims of a common policy or plan that violated the law.'" Amendola, 558 F. Supp. 2d at 467 (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). The "modest factual showing" requirement is met where plaintiffs offer "'substantial allegations' of a factual nexus between [them] and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Davis v. Abercrombie & Fitch Co., No. 08 Civ. 1859

5

(PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) (quoting Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078 (RMB) (RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004); citing Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (in order to meet the "low bar for allegations required for collective action certification," the plaintiff's complaint or affidavits must allege a factual nexus with other employees of the defendant)). "Plaintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one," and that determination may be modified or reversed after discovery. Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006); accord Wraga v. Marble Lite, Inc., No. 05 Civ. 5038 (JG) (RER), 2006 WL 2443554, at *1-2 (E.D.N.Y. Aug. 22, 2006); Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005); Gjurovich, 282 F. Supp. 2d at 104; Young v. Cooper Cameron Corp., 229 F.R.D. 50, 55 (S.D.N.Y. 2005).

When evaluating whether court-authorized notice is appropriate, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." Davis, 2008 WL 4702840, at *9 (citing Lynch, 491 F. Supp. 2d at 368-69); see also Francis v. A&E Stores, Inc., No. 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858, at *2 (S.D.N.Y. Oct. 15, 2008) ("Plaintiffs must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law,' but the merits of plaintiff's claims are not evaluated until later in the litigation." (quoting Hoffmann, 982 F. Supp. at 261-62)). Indeed, in considering such a motion, "[a] court need not evaluate the underlying merits of a plaintiff's claims . . . ." Damassia, 2006 WL 2853971, at *3 (citing Scholtisek, 229 F.R.D. at 391; Gjurovich, 282 F. Supp. 2d at 105; Hoffmann, 982 F. Supp. at 262). Because courts do not weigh the merits of a plaintiff's claim,

6

extensive discovery is not necessary at the notice stage. See Masson, 2005 WL 2000133, at *15 (noting that defendant's stated need for "extensive" discovery does "not bear on whether this case can proceed as a collective action"). Plaintiffs may satisfy their "minimal" burden by relying on their own pleadings and affidavits, or the affidavits of potential members of the collective action. Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12901 (CM) (LMS), 2007 WL 1552511, at *4 (S.D.N.Y. Apr. 26, 2007).

The standard for class certification under Federal Rule of Civil Procedure 23 is, of course, not relevant to an FLSA collective action. Unlike under Rule 23, "'no showing of numerosity, typicality, commonality, [or] representativeness need be made.'" Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (quoting Young, 229 F.R.D. at 54). As a result, the "similarly situated" standard for authorizing that notice be made to potential opt-in plaintiffs in an FLSA collective action is "considerably more liberal than class certification under Rule 23." Id.

"Plaintiffs who opt in to a collective action after a court authorizes notice do not necessarily remain parties to the action through trial. After discovery, courts typically engage in a 'second tier' of analysis to determine on a full record – and under a more stringent standard – whether the additional plaintiffs are in fact similarly situated." Damassia, 2006 WL 2853971, at *3. "If the factual record reveals that the additional plaintiffs are not similarly situated to the original plaintiffs, the collective action is 'decertified,' and the claims of the opt-in plaintiffs are dismissed without prejudice." Id. (quoting Lee, 236 F.R.D. at 197; citing Scholtisek, 229 F.R.D. at 387).

B.  **Analysis**

In resolving the question of whether a plaintiff has met his minimal burden of showing that he and the potential opt-in plaintiffs are "similarly situated . . . with respect to their allegations that the law has been violated," Young, 229 F.R.D. at 54, "[c]ourts regularly rely on plaintiffs' affidavits and hearsay statements . . . ." Salomon v. Adderley Indus., 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012); see also Indergit v. Rite Aid Corp., No. 08 Civ. 9361 (PGG), 2010 WL 2465488, at *5 (S.D.N.Y. June 16, 2010) (authorizing notice to Rite Aid managers based on plaintiff's affidavits and company's nationwide job descriptions); Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (authorizing notice to parking lot attendants based on plaintiffs' affidavits).

Here, Plaintiff has supplied affidavits and other evidence satisfying his minimal burden of showing that similarly situated individuals exist and that court-authorized notice to members of the putative collective action is appropriate. Plaintiff – who served as both a Network Computing Analyst and a Staff Specialist over his approximately nine-year tenure at M&T Bank (Schaefer Decl. (Dkt. No. 33) Ex. B ¶¶ 2-3) – has submitted a declaration stating that the job duties of Network Computing Analysts and Staff Specialists are "essentially the same." (Id. ¶ 7) These duties primarily involve "installing, maintaining, networking, and/or supporting computer hardware or software for M&T, and responding to incident escalations from the help desk." (Id.) Plaintiff also states that "based on his personal observations and conversations," the Network Computing Analysts and Staff Specialists in other sub-departments within the Technology Infrastructure Department "performed similar job duties . . . related to providing technical and trouble-shooting support to the bank." (Id.) Plaintiff further states that he "regularly worked alongside and in conjunction with other Network Computing Analysts and

Staff Specialists from different departments and teams within M&T's Technology Infrastructure group." (Id. ¶ 8) The three individuals who have consented to participate in this lawsuit have supplied declarations making essentially the same claims. (Roberts Decl. (Dkt. No. 33) Ex. C ¶¶ 7-8; Spinella Decl. (Dkt. No. 33) Ex. D ¶¶ 7-8; Collier Decl. (Dkt. No. 33) Ex. E ¶¶ 7-8)

Plaintiff has also proffered evidence suggesting that M&T Bank classifies all of the Network Computing Analysts and Staff Specialists of the Technology Infrastructure Department as exempt, regardless of the employee's job title, sub-department, or duties. See Schaefer Decl. (Dkt. No. 33) Ex. C ¶¶ 9-11; Fitapelli Aff. (Dkt. No. 33) Ex. F at 1-5 (Job Descriptions); id. Ex. J (performance review referring to Plaintiff's department as "Technology Infrastructure" rather than a specific sub-department, unit, or team). Moreover, M&T Bank's internal job description for Senior Network Computing Analysts lists the applicable work department as the "TECHNOLOGY & BANKING OPS DIV" as a whole; M&T makes no distinction with respect to a Senior Network Computing Analyst's job duties – or status under the FLSA – based on the sub-department to which the employee is assigned. See id. Ex. F at 1-2. Similarly, the job description for Staff Specialists makes no distinction based on the employee's sub-department. See id. at 5. Both job descriptions state that employees are exempt from the FLSA regardless of their specific department. (Id. at 1, 5)

Plaintiff's allegations of such a blanket classification by M&T Bank suggest that whatever differences exist among the employees' job duties, those differences are irrelevant for purposes of determining the applicability of the FLSA. See Trawinski v. KPMG LLP, No. 11 Civ. 2978 (PAC), 2012 WL 6758059, at *4 (S.D.N.Y. Dec. 21, 2012) ("It is undisputed that KPMG classified all Transaction Associates as exempt from overtime and the other allegedly relevant provisions of the FLSA. This uniform classification is done without regard to any

special or individualized functions that any particular Associate performs or where the Associate works or what type of companies he/she works with; there is, in short no person-by-person determination of exempt or non-exempt status. . . . [This] cuts against KPMG's arguments that Associates engage in work that varies substantially from engagement to engagement and that an individualized inquiry is necessary to adjudicate whether the . . . exemption applies with respect to the actual duties of any given Associate. Rather, KPMG's own blanket determination is evidence that differences in the position, to the extent there are any, are not material to the determination of whether the job is exempt from overtime requirements." (internal citations, quotation marks, and alterations omitted)). Accordingly, M&T Bank's alleged blanket classification is further evidence that Plaintiff and the potential opt-ins are similarly situated for purposes of determining whether M&T Bank's policies violate the FLSA. See id.; Hallissey v. Am. Online, Inc., No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008) (authorizing notice in FLSA case based on "the fundamental allegation found in Plaintiffs' declarations and pleadings that ['community leaders' ('CLs')] were denied minimum and overtime wages because of their classification by AOL as 'volunteers' in the CL program"); cf. Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 159 (S.D.N.Y. 2008) (finding, in Fed. R. Civ. P. 23 context, that employer's "blanket determination is evidence that differences in the [assistant manager] position, to the extent that there are any, are not material to the determination of whether the job is exempt from overtime requirements.").

   Accordingly, the evidence proffered by Plaintiff is sufficient at this stage to show that Plaintiff and the potential collective action members "were victims of a common policy or plan that [allegedly] violated the law." See Amendola, 558 F. Supp. 2d at 467 (to obtain court-authorized notice, plaintiff must "make only a 'modest factual showing' that she and the other

putative collective action members 'were victims of a common policy or plan that violated the law'" (quoting Realite, 7 F. Supp. 2d at 306)).

Defendant argues that Plaintiff mischaracterizes the job duties of – and overstates the similarities between – the Network Computing Analysts and Staff Specialists within the different sub-departments of the Technology Infrastructure Department. Defendant argues that the duties of employees within each job title and sub-department vary widely. See Quinn Decl. (Dkt. No. 38) ¶¶ 8-32. Plaintiffs' declarations suggest, however, that all of the employees holding these job titles – while not performing identical activities – perform "similar" duties "related to providing technical and trouble-shooting support to the bank." (Schaefer Decl. (Dkt. No. 33) Ex. B ¶ 7) Moreover, Plaintiff's assertion is based on his experience working on teams with Network Computing Analysts and Staff Specialists from other sub-departments. (Id. ¶ 8)

This Court is not in a position at this stage of the litigation to determine which account of the employees' job duties is accurate. The parties' arguments present a factual dispute not appropriate for resolution on the instant motion: when evaluating whether court-authorized notice is appropriate, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." Davis, 2008 WL 4702840, at *9 (citing Lynch, 491 F. Supp. 2d at 368-69); see also Francis, 2008 WL 4619858, at *2 ("Plaintiffs must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law,' but the merits of plaintiff's claims are not evaluated until later in the litigation." (quoting Hoffmann, 982 F. Supp. at 261-62)).

Defendant also argues that nationwide notice is not appropriate in this case because Plaintiff has "fail[ed] to submit evidence that all members of the nationwide collective

are similarly situated," and because "Schaefer and the other declarants fail to identify where members of the putative collective were/are employed." (Def. Br. (Dkt. No. 35) at 20)  This argument is unavailing.  Defendant does not dispute Plaintiff's claim that Network Computing Analysts and Staff Specialists at different locations perform similar job duties.  Moreover, the job descriptions submitted by Plaintiff and the organizational charts submitted by Defendant appear to apply across the entirety of the company, regardless of the employee's location.  See Fitapelli Aff. (Dkt. No. 33) Ex. F (Job Descriptions); Quinn Decl. (Dkt. No. 38) Exs. 1, 3, 4, 5 (Organizational Charts).

"Courts routinely authorize notice in FLSA actions even where potential opt-in plaintiffs work at different locations, perform somewhat different duties, and are managed by different supervisors." Grant v. Warner Music Grp., No. 13 Civ. 4449 (PGG), 2014 WL 1918602, at *7 (S.D.N.Y. May 13, 2014) (citing Indergit, 2010 WL 2465488, at *5 (granting motion for court-authorized notice for collective of Rite Aid managers despite defendants' contention that managerial duties varied because of the "unique characteristics of each [Rite Aid] store"); Barry v. S.E.B. Serv. of New York, Inc., No. 11 Civ. 5089 (SLT) (JMA), 2013 WL 6150718, at *7 (E.D.N.Y. Nov. 22, 2013) (authorizing notice to nationwide putative collective of security guards even though plaintiffs' evidence addressed only employees in the New York/New Jersey/Connecticut area); Ack v. Manhattan Beer Distributors, Inc., No. 11 Civ. 5582 (CBA), 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (plaintiffs met conditional certification burden even though sales associates worked at different locations and reported to different managers)).

Should Plaintiff and the potential opt-ins – whether in different sub-departments or different locations – in fact not conduct sufficiently similar job duties for a common analysis

of whether they are exempt from the FLSA, "'such factual determinations [are more appropriately] . . . addressed at the second stage of the certification process after the completion of discovery.'" Ack, 2012 WL 1710985, at *6 (quoting Summa v. Hofstra Univ., No. 07 Civ. 3307 (DRH) (ARL), 2008 WL 3852160, at *5 (E.D.N.Y. Aug.14, 2008)). At this stage, it is sufficient for Plaintiff to offer "generalized proof" that Defendant has a national policy of misclassifying the Network Computing Analysts and Staff Specialists within the Technology Infrastructure Department as exempt from the FLSA's requirements. O'Jeda v. Viacom, Inc., No. 13 Civ. 5658, 2014 WL 1344604, at *1 (S.D.N.Y. Apr. 4, 2014). Here, Plaintiff has offered such "generalized proof" in the form of (1) Plaintiff's declaration asserting that over his nine-year tenure in the Technology Infrastructure Department he worked with Network Computing Analysts and Staff Specialists of the other sub-departments and observed them perform job duties similar to his own; and (2) M&T Bank's own classification of all Network Computing Analysts and Staff Specialists within the Technology Infrastructure Department as exempt, regardless of their sub-department. This evidence is sufficient at this stage to show that – with respect to determining the applicability of the FLSA – Plaintiff is similarly situated to the members of the putative collective.

Defendant's arguments that Plaintiff is an inadequate representative, and that the scope of the proposed collective is too broad (see Def. Br. (Dkt. No. 35) at 14-20), are not persuasive. Under the FLSA, "'no showing of numerosity, typicality, commonality, and representativeness need be made.'" Iglesias-Mendoza, 239 F.R.D. at 368 (quoting Young, 229 F.R.D. at 54). All that Plaintiff need show at this stage is that he and the potential opt-ins "were victims of a common policy or plan that violated the law." Amendola, 558 F. Supp. 2d at 467 (citation and quotation marks omitted). Plaintiff can make this showing without demonstrating

13

that he worked in every sub-department or at every M&T Bank location. Here, Plaintiff has made the necessary showing (1) through his allegations concerning the similarity between the job duties of the employees within the different sub-departments, and (2) by offering evidence that M&T Bank classifies all Network Computing Analysts and Staff Specialists as exempt, regardless of their location or sub-department within the Technology Infrastructure Department.

Defendant also argues that Plaintiff has not defined the putative collective with sufficient clarity. See Def Br. (Dkt. No. 35) at 20-23. Plaintiff defines the putative collective as those individuals who "have been employed by M&T Bank . . . in the Technology Infrastructure [Department] as a Network Computing Analyst I, Network Computing Analyst II, Senior Network Computing Analyst, Staff Specialist, and/or Senior Staff Specialist at any time between August 19, 2011 and the present . . . ." (Proposed Notice of Collective Action Lawsuit (Dkt. No. 33) Ex. O at 1; see also Pltf. Reply Br. (Dkt. No. 34) at 1) Although the Technology Infrastructure Department no longer exists – due to a restructuring that began last summer – the relevant sub-departments and job titles still exist. (Quinn Decl. (Dkt. No. 38) ¶¶ 33-34) Accordingly, the putative collective has been defined with sufficient clarity.

Finally, Plaintiff requests that the look-back period of the notice be computed from the date the Complaint was filed – August 19, 2014 – rather than from the date of this Order. See Pltf. Br. (Dkt. No. 32) at 23-24. Typically, the FLSA look-back period is measured from the date of the court's order on the motion for leave to disseminate notice. See Diaz v. S&H Bondi's Dep't Store, No. 10 Civ. 7676 (PGG), 2012 WL 137460, at *9 n.7 (S.D.N.Y. Jan. 18, 2012). Courts, however,

> have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances. . . . [T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a[n] FLSA case, may be deemed an extraordinary

14

> circumstance justifying application of the equitable tolling doctrine. While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings.

McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (internal citations and quotation marks omitted). Typically, equitable tolling results in the look-back period being keyed to the date of the filing of the motion seeking court-authorized notice. See id. Here, Plaintiff's motion for leave to disseminate notice was filed on June 4, 2015. Prior to the filing of this motion, the parties engaged – at this Court's direction – in discovery and negotiations regarding the scope of the putative collective. See Dkt. Nos. 15, 18. Because no agreement could be reached regarding the scope of the collective, this motion became necessary. Under these circumstances, and given the additional months that the instant motion has been pending, the Court finds that equitable tolling is appropriate as of the date the motion was filed. Accordingly, notice will be sent to potential opt-in plaintiffs for the time period beginning June 4, 2012.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to disseminate notice to potential opt-in plaintiffs (Dkt. No. 31) is granted. The putative collective will consist of those individuals who were employed by M&T Bank in the Technology Infrastructure Department as Network Computing Analysts I, Network Computing Analysts II, Senior Network Computing Analysts, Staff Specialists, and/or Senior Staff Specialists between June 4, 2012 and the present. The parties are directed to meet and confer within seven days of this Order concerning (1) any issues resulting from the restructuring of the Technology Infrastructure Department; and (2) the form of the notice. The parties will submit the proposed notice – or competing versions of the

proposed notice – within 14 days of this Order. Any remaining issues concerning notice should likewise be presented to this Court at that time. The Clerk of the Court is directed to terminate the motion (Dkt. No. 31). The conference presently scheduled for August 20, 2015 is adjourned to October 8, 2015 at 10:30 a.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

Dated:  New York, New York
        August 19, 2015

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge