**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, New York 10005

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch, *Pro Hac Vice*
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| **JAMES SCHAEFER, JR., on behalf of himself and all others similarly situated,** |
| **Plaintiff,** |
| -against- |
| **M&T BANK CORPORATION,** |
| **Defendant.** |

**No: 14 Civ. 6622 (PGG)**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
## FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

## TABLE OF CONTENTS

**INTRODUCTION**......................................................................................................1

**SUMMARY OF THE SETTLEMENT TERMS** ...................................................2

   **I.**  **The Settlement Fund** ..........................................................................2

   **II.** **Eligible Employees** ...........................................................................2

   **III.** **Notice Process** .................................................................................3

   **IV.** **Settlement Award** ............................................................................3

**ARGUMENT** .............................................................................................................4

   **I.**  **A One-Step Approval Process Is Standard for FLSA Settlements**................4

   **II.** **The Proposed Settlement Should Be Approved
            Because It Is Fair And Reasonable** ....................................................5

   **III.** **The Service Awards Are Appropriate** ........................................................6

   **IV.** **An Award of Attorneys' Fees and Costs Is Appropriate**...............................11

       A.  *The percentage method is the preferred method for
           awarding attorneys' fees in common fund cases in the Second Circuit*...........11

       B.  *The Goldberger factors support an award of
           one-third of the common fund* .............................................................14

           1. Class Counsel's Time and Labor ...............................................14
           2. The Litigation's Magnitude and Complexity.............................15
           3. The Risks of Litigation..............................................................15
           4. Quality of Representation...........................................................17
           5. The Fee Is Reasonable In Relation To The Settlement .............18
           6. Public Policy Considerations......................................................18

       C.  *The lodestar cross check further supports an award to
           Plaintiffs' Counsel of one-third of the settlement fund* ....................................19

**V.** **The Claims Administrator's Fees Are Reasonable** ........................................................21

**CONCLUSION** ........................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) ..................................................... 18

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ................................ 4

*Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM)
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .......................................................... 13

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................................ 15

*Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .............................................. 13,20,21

*Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (GBD)(JCF)
ECF No. 148 (S.D.N.Y. May 6, 2016) ..................................................................... 6

*Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS)
2014 WL 6621081 (E.D.N.Y. Nov. 21, 2014).......................................................... 12

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ............................................................. 13

*Chavarria v. New York Airport Service, LLC*,
875 F. Supp. 2d 164 (E.D.N.Y. 2012) ................................................................ 5,12,16,18

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ...................................... 6,10

*deMunecas v. Bold Food LLC*, No. 09 Civ. 0440 (DAB)
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).......................................................... 19

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ...................................... 7,8,9,15

*Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09 Civ. 486 (ETB)
2012 WL 1843785 (E.D.N.Y. May 21, 2012) .......................................................... 6,12,19

*Geskina v. Admore Air Conditioning Corp et al.*, No. 16 Civ. 3096 (HBP)
2017 WL 1743842 (S.D.N.Y. May 3, 2017)............................................................. 10

*Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE)
2012 WL 2458172 (S.D.N.Y. June 28, 2012) .......................................................... 17

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)................................. passim

*Hadel v. Gaucho,* LLC, 193 F. Supp. 3d 243 (S.D.N.Y. 2016)......................................................... 17

*Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL)
    2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ........................................................................ 4,5

*Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043
    2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015)........................................................................ 16

*Hernandez v Immortal Rise, Inc.*, 306 F.R.D. 91 (E.D.N.Y. 2015).......................................... 11,13

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)............................................................ 4

*In re Lawrence*, 24 N.Y.3d 320, 341, 23 N.E.3d 965 (2014) ..................................................... 16

*Karic v. The Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (ENV) (CLP)
    2016 WL 323673 (E.D.N.Y. Jan. 26, 2016) ........................................................................... 13

*Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP)
    2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ............................................................... 7,8,10,12

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC)
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................................................. 6,14,18

*Kochilas v. Nat'l Merch. Servs., Inc.*, No. 14 Civ. 00311 (LB)
    2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) ........................................................................... 13

*Kucker v. Petco Animal Supplies Stores, Inc.*, No. 14 Civ. 9983 (DCF)
    ECF No. 156 (S.D.N.Y. Apr. 11, 2017) .................................................................................... 6

*Lovaglio v. W & E Hosp. Inc.*, No. 10 Civ. 7351 (LLS)
    2012 WL 2775019 (S.D.N.Y. July 6, 2012) ............................................................................ 17

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)................................... 5

*Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669 (BMC)
    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)........................................................................ 5,9

*McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ............................................... 11

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ............................................... 4

*Mendez v. U.S. Nonwovens Corp.*, No. 12 Civ. 5583 (ADS)(SIL)
    2016 WL 1306551 (E.D.N.Y. Mar. 31, 2016)........................................................................... 6

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ)(JCF)
    2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)........................................................................... 9,10

*Puglisi v. TD Bank., N.A.*, No. 13 Civ. 637 (GRB)
  2015 WL 4608655 (E.D.N.Y. July 30, 2015) .................................................................... 11,12

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC)
  2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ............................................................................ 21

*Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234 (LB)
  2013 WL 5308277 (E.D.N.Y. Sept. 19, 2013) ...................................................................... 12

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999) .......................................................... 13

*Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (ALC)(SN)
  2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) ........................................................................ 6

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE)
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ......................................................................... 9

*Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA)
  2015 WL 10912856 (E.D.N.Y Sept. 30, 2015) ....................................................................... 5

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ......................................... 10

*Silva v. Little Fish, Corp.*, No. 10 Civ. 7801 (PGG)
  2012 WL 2458214 (S.D.N.Y. May 1, 2012) ............................................................................ 7

*Souza v. 65 St. Marks Bistro d/b/a Jules Bistro*
  No. 15 Civ. 327  (JLC), 2015 WL 7271747 (S.D.N.Y. Nov. 6, 2015) ...................................... 10

*Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE)
  2014 WL 3778173 (S.D.N.Y. July 31, 2014) ......................................................................... 17

*Sykes v. Harris*, No. 09 Civ. 8486 (DC)
  2016 WL 3030156 (S.D.N.Y. May 24, 2016) ........................................................................ 18

*Taft v. Ackermans*, No. 02 Civ 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).......... 15

*Tiro v. Public House Invs., LLC*, Nos. 11 Civ. 7679 (CM)
  11 Civ. 8249 (CM), 2013 WL 4830949 (S.D.N.Y. 2013) ................................................. passim

*Toure v. Amerigroup Corp.*, 10 CIV. 5391 (RLM)
  2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)................................................................. 13,18,20

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS)(KNF)
  2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......................................................................... 8

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER)
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..................................................................... passim

*Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) ............................................................ 5

*Wright v. C.E.C. Entertainment, Inc.*, No. 14 Civ. 6110 (MKB)(RER)
   ECF No. 53 (E.D.N.Y. July 27, 2016) ...................................................................................... 11

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ.  3693 (PGG)
   2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ........................................................................ 7,21

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (FM)
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ......................................................................... 21

## INTRODUCTION

Subject to Court Approval, Plaintiff James Schaefer Jr. (the "Named Plaintiff"), individually and on behalf of the collective he seeks to represent (the "Prospective Collective Members") (together, "Plaintiffs")[1], and Defendant M&T Bank Corporation and Manufacturers and Traders Trust Company (together, "Defendant")[2] have settled this wage and hour collective action for $2,490,000.00. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute, and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law with the assistance of an experienced mediator.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the $2,490,000.00 settlement set forth in the Settlement Agreement and Release[3] ("Settlement Agreement"), the releases set forth therein, and ruling that the Settlement Agreement is binding on all Parties, including the Named Plaintiff, Service Award Plaintiffs, Participating Collective Members, and Opt-In Plaintiffs; (2) ordering entry of the Approval Order attached as **Exhibit A** to the Settlement Agreement; (3) certifying the identified collective for settlement purposes only; (4) approving the proposed Claim Form and Notices of Settlement  (attached as **Exhibits A, C** and **D** to the Settlement Agreement) and directing their distribution; (5) approving Service Awards of $15,000 to Named Plaintiff James Schaefer and $10,000 each to Opt-Ins Plaintiffs William Collier and Mitchell Roberts (collectively, "Service Award Plaintiffs") for their services

---

[1]    Plaintiffs are 240 individuals currently and/or formerly employed by Defendant as IT employees.  This includes "Prospective Collective Members," which are identified in **Exhibit E** to the Settlement Agreement, and "Opt-In Plaintiffs," which  are identified in **Exhibit F** to the Settlement Agreement.

[2]    M&T Bank Corp. and Manufacturers and Traders Trust Company deny all liability in this action.  M&T Bank Corp. denies that it is an "employer" of any of the Plaintiffs.  By entering into the settlement, and agreeing not to oppose this motion, M&T Bank Corp. and Manufacturers and Traders Trust Company do not admit liability.

[3]    The Settlement Agreement is attached as **Exhibit A** to the Declaration of Joseph A. Fitapelli in Support of Plaintiff's Unopposed Motion for Approval of Collective Action Settlement ("Fitapelli Decl."). All Exhibits are attached to the Fitapelli Decl. unless otherwise noted.

to the collective and to settle their individual claims; (6) approving Plaintiffs' Counsel's request for one-third of the Gross Settlement Fund for attorneys' fees; (7) approving payment of Plaintiffs' Counsel's reasonable out-of-pocket costs and expenses in the amount of $10,000.00; (8) approving the Settlement Claims Administrator's fees; (9) dismissing the case with prejudice; and (10) retaining jurisdiction as necessary for the purpose of enforcing the terms of the Agreement.  Please see the Fitapelli Decl. for an outline of the factual and procedural history of this matter.

## SUMMARY OF THE SETTLEMENT TERMS

### I.  The Settlement Fund

The Settlement Agreement establishes a gross settlement fund of $2,490,000.00 to settle claims against the Defendant (the "Gross Settlement Fund"). **Ex. A** (Settlement Agreement) ¶¶ 2.24, 2.25. The Gross Settlement Fund covers claims of all Prospective Collective Members and Opt-In Plaintiffs; all attorneys' fees and costs; service awards; and the fees and costs of the Settlement Claims Administrator. *Id.*  Defendant will pay their share of payroll taxes in addition to the sum of the Gross Settlement Fund. *Id*.

### II.  Eligible Employees

The Prospective Collective Members means the current and former M&T employees identified in **Exhibit E** to the Settlement Agreement. Prospective Collective Members is comprised of certain current and former M&T employees who worked in M&T's infrastructure area in New York from on or after August 19, 2008 through December 31, 2017, or in states other than New York on or after and June 4, 2012 through December 31, 2017 (collectively "Relevant Statutory Period"). **Ex. A,** Settlement Agreement ¶ 4.4. Opt-In Plaintiffs are

individuals who previously opted into the lawsuit as of January 1, 2017. *Id.* ¶ 2.13; **Exhibit F** to the Settlement Agreement.

## III.  <u>Notice Process</u>

Within 2 days of the Effective Date[4] Defendant will provide the Settlement Claims Administrator with an electronic list with the name, last known address, last known phone number(s) (to the extent known), last known email address(es) (to the extent known), social security number, location(s) worked, and dates of employment within the relevant titles during the Relevant Statutory Period for individuals identified in Exhibits E and F to the Settlement Agreement. *Id.* ¶ 3.4. Within twenty days of the Effective Date, the Settlement Claims Administrator will mail Notice Packets to Prospective Collective Members and Opt-In Plaintiffs. *Id.* ¶ 3.5.  Prospective Collective Members will have sixty (60) days to submit a valid claim form should they wish to participate in this settlement. *Id.*

Only those Prospective Collective Members who submit a claim form and endorse and deposit/cash their settlement check will release Defendant from all wage and hour claims under the FLSA and under  state and local law through December 31, 2017. *Id.* ¶ 5.1. Opt-In Plaintiffs do not need to submit a claim form and only those who endorse and deposit/cash their settlement check will release Defendant from all wage and hour claims under the FLSA and applicable state and local law which were or which could have been brought through December 31, 2017. *Id.*

## IV.  <u>Settlement Award</u>

Prospective Collective Members and Opt-In Plaintiffs shall be assigned one (1) point for each week worked during the Relevant Statutory Period as a Network Computing Analyst I,

---

[4]     The "Effective Date" of this Agreement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of the Approval Order, if there are no appeals; or (b) if there is an appeal of the Court's Approval Order, the day after all appeals are finally resolved in favor of final approval. **Ex. A**, Settlement Agreement ¶ 2.8.

Network Computing Analyst II, Staff Specialist, and Senior Network Computing Analyst. *Id*. ¶ 4.4. Opt-In Plaintiffs shall also be assigned one half (.5) of a point for each week worked as a Senior Staff Specialist. *Id*. After prolonged negotiations with Defendant, the parties agreed to include the Senior Staff Specialist position for Opt-In Plaintiffs as it was included in the Court's Order granting conditional certification. Dkt. No. 42; Fitapelli Decl. ¶ 31. The reduced point allocation is to account for the difference in duties and compensation earned by Senior Staff Specialist in comparison to the other covered positions. The amount of each Prospective Collective Member and Opt-In Plaintiff's share of the Net Settlement Fund will be disclosed in their respective Notice Packet. *See* **Exhibits C and D** to Settlement Agreement.

## ARGUMENT

### I.      A One-Step Approval Process Is Standard for FLSA Settlements.

Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001).  Because under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016) ("FLSA collective actions do not implicate the same due process concerns as Rule 23 actions").

As stated in *Willix v. Healthfirst, Inc.*, the exacting standard for approval of a class action settlement under Rule 23 does not apply to FLSA settlements. No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011) ("The standard for approval of an FLSA

settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."); *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856, at *6 (E.D.N.Y Sept. 30, 2015) ("the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement"); *Chavarria v. New York Airport Service, LLC*, 875 F. Supp. 2d 164, 176 (E.D.N.Y. 2012) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement.").  There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it.  *See Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) ("The difference between a Rule 23 class action and a section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

## II.     The Proposed Settlement Should Be Approved Because It Is Fair and Reasonable.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Willix*, 2011 WL 754862, at *5; *see also Hall*, 2016 WL 1555128, at *8 (same); *Chavarria*, 872 F. Supp. 2d at 176 (same). "[C]ourts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Willix*, 2011 WL 754862, at *5 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982)); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012).  "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Willix*, 2011 WL 754862, at *5; *see also Lynn's Food Stores*, 679 F.2d at 1354; *Massiah*, 2012 WL 5874655, at *5.

Here, the FLSA settlement meets the standard for approval.[5]  The settlement was reached after vigorous arm's-length negotiations facilitated by an experienced mediator, and substantial informal discovery.  Fitapelli Decl.  ¶¶ 16-28; s*ee, e.g.*, **Ex. B**, *Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (GBD)(JCF), ECF No. 148 (S.D.N.Y. May 6, 2016)(finding the FLSA settlement fair and reasonable after arm's length negotiations); **Ex. C**, *Kucker v. Petco Animal Supplies Stores, Inc.*, No. 14 Civ. 9983 (DCF), ECF No. 156 (S.D.N.Y. Apr. 11, 2017) (same); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09 Civ. 486 (ETB), 2012 WL 1843785, at *2 (E.D.N.Y. May 21, 2012) (citing *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) (approving FLSA settlement after the parties engaged in mediation with an experienced mediator)).

The settlement amount is reasonable in light of the considerable risk that Plaintiffs face. First, although Plaintiffs obtained conditional certification, maintaining the collective and certifying a class through trial may be difficult. Fitapelli Decl. ¶ 24. Defendant would likely argue that the differences among various job titles, departments and other individualized questions preclude class certification and would warrant decertification of the collective. *Id*. Moreover, Defendant could argue that the computer exemption applies to Plaintiffs and ultimately convince the Court that Plaintiffs were properly classified as exempt from overtime pay. *Id*. Although Plaintiffs disagree, other defendants have prevailed on such arguments in similar cases.  *See, e.g.*, *Mendez v. U.S. Nonwovens Corp.*, No. 12 Civ. 5583 (ADS)(SIL), 2016 WL 1306551, at *3-7 (E.D.N.Y. Mar. 31, 2016) (decertifying the collective as the plaintiffs failed to show that their claims for overtime were supported by "generalized proof"); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (ALC)(SN), 2017 WL 1287512, at *9 (S.D.N.Y.

---

[5]     While the Second Circuit's ruling in *Cheeks v. Freeport Pancake House, Inc.* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as confidentiality and attorneys' fees over 40%. 796 F.3d 199, 206 (2d Cir. 2015).  This agreement contains no such red-flags, and thus should be approved.

Mar. 29, 2017) (decertifying the collective).

Second, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Establishing damages, including that Prospective Collective Members consistently worked over 40 hours a week and the proper method for calculating overtime presents risk. Fitapelli Decl. ¶ 24. Therefore, this settlement should be approved.

## III.   **The Service Awards Are Appropriate.**

In addition to their *pro rata* shares of the Net Settlement Fund, Named Plaintiff James Schaefer Jr. requests $15,000 and Opt-In Plaintiffs William Collier and Mitchell Roberts $10,000 each as service awards for their participation, assistance in the prosecution of this lawsuit and to fully resolve their claims against Defendant. **Ex. A** (Settlement Agreement) ¶ 4.3; *See also*, **Exhibit G** to settlement agreement.   For the following reasons, the Court should approve these service awards. *See Yuzary v. HSBC Bank USA, N.A.*, 12 CIV. 3693 (PGG), 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (granting service awards of $10,000 to each of the named plaintiffs) (Gardephe, J); *Silva v. Little Fish, Corp.*, No. 10 Civ. 7801 (PGG), 2012 WL 2458214, at *3 (S.D.N.Y. May 1, 2012) (awarding a service award of $15,000); (Gardephe, J); *Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016) (approving service awards of $20,000 each); *Willix*, 2011 WL 754862, at *5 (approving service awards totaling $75,000.00 to three named plaintiffs and two opt-in plaintiffs).

Courts recognize the important factual knowledge that plaintiffs bring to employment class and collective actions, including information about employer policies and practices that affect wages. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims[,]"

including by responding to counsel's questions and reviewing documents).  Service awards "are particularly appropriate in the employment context … [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers."  *Frank*, 228 F.R.D. at 187.

The Service Award Recipients assisted Plaintiffs' Counsel's investigation and prosecution of the claims by providing detailed factual information and documents regarding the nature of their duties and responsibilities, the hours that they worked, and other information relevant to their claims. Fitapelli Decl. ¶¶ 36-38. Throughout the investigation and settlement negotiations, the Service Award Recipients regularly made themselves available to communicate with Plaintiffs' Counsel when necessary, including during mediation. *Id.*  While there has been no threat or indication of retaliation here, they risked retaliation from their current employer and put their ability to secure future employment at risk as well. *Id.* ¶¶ 37, 38; *see also  Karic*, 2016 WL 1745037, at *7  (the named plaintiffs take a "significant risk in pursuing [wage and hour cases]; [they] could have faced retaliation from defendants and/or be 'black balled' from the industry.").

The service awards are reasonable given the significant contribution the Service Award Recipients made to the prosecution and resolution of the lawsuit. Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS)(KNF), 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by

the employer or co-workers.") (quoting *Frank*, 228 F.R.D. at 187) (internal quotation marks omitted).

Here, the Service Award Recipients' actions exemplify the very reason courts award service payments. *See Frank*, 228 F.R.D. at 187 (recognizing the important role that plaintiffs play as the "primary source of information concerning the claim[,]" including by responding to counsel's questions and reviewing documents); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents, formulating theory of case, identifying and locating other class members to expand settlement participants, and attending court proceedings).  "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Willix*, 2011 WL 754862, at *7.  Service awards further the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah*, 2012 WL 5874655, at *8.

The Service Award Recipients also assumed significant risks in prosecuting this action. Specifically, they took a chance that they would be "black listed" for the sake of the collective. Fitapelli Decl.  ¶ 37.  In the employment context, where workers are often blacklisted if they are considered "trouble makers," class representatives are particularly vulnerable to retaliation. *See, e.g.*, *Tiro v. Public House Invs., LLC*, Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 4830949, at *11 (S.D.N.Y. 2013); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees") (citation omitted);

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less other be dissuaded.").

Even where there is not a record of actual retaliation, service awards are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent class members.  *See Karic*, 2016 WL 1745037, at *7; *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").  Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

Additionally, the Service Awards are separate and apart from any amount the Service Award Recipients may receive as part of the settlement. As a result, the parties separately negotiated the terms of additional compensation for Service Award Recipients in exchange for a general release of their claims. *See* **Exhibit G** to Settlement Agreement**,** Service Award Agreements; **Ex. A,** Settlement Agreement, ¶ 5.1(G). Courts in this Circuit have permitted a general release in wage and hour settlements in exchange for additional compensation given to plaintiffs. **Ex. D,** *Flood v. Carlson Restaurants Inc.*, settlement docs; *see also*, *Souza v. 65 St. Marks Bistro d/b/a Jules Bistro*, No. 15 Civ. 327  (JLC), 2015 WL 7271747, (S.D.N.Y. Nov. 6, 2015) (permitting general release post *Cheeks*); *Geskina v. Admore Air Conditioning Corp et al.*, No. 16 Civ. 3096 (HBP), 2017 WL 1743842 (S.D.N.Y. May 3, 2017) (same).

Given their time and assistance in developing the case, combined with the considerable risks of retaliation that the Service Award Recipients assumed by serving the interests of the collective, the service awards are appropriate and justified as part of the overall Settlement.

## IV. An Award of Attorneys' Fees and Costs Is Appropriate.

Plaintiffs' Counsel's unopposed motion for approval includes a request for an award of one-third of the Gross Settlement Fund as attorneys' fees, as well as reimbursement of $10,000.00[6] in litigation costs incurred in the successful prosecution of this case. The fee Plaintiffs' Counsel seeks – one-third of the settlement fund – is a typical award in a class or collective action settlement. *See, e.g.*, *Willix*, 2011 WL 754862, at *5 (awarding class counsel one-third of the settlement fund); **Ex. E**, *Wright v. C.E.C. Entertainment, Inc., No. 14 Civ. 6110 (MKB)(RER), ECF No. 53 (E.D.N.Y. July 27, 2016)* (same); *Karic*, 2016 WL 1745037, at *8 (awarding class counsel one-third of the settlement fund stating that "[c]ourts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of the settlement fund"); *Puglisi v. TD Bank., N.A.*, No. 13 Civ. 637 (GRB), 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (awarding class counsel one-third of the settlement fund).

### A. *The percentage method is the preferred method for awarding attorneys' fees in common fund cases in the Second Circuit.*

There are two ways to compensate attorneys for successful prosecution of statutory claims: the lodestar method and the percentage of the fund method. *See McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "In wage and hour class or collective action lawsuits, public policy favors a [percentage of the] fund attorneys' fee award." *Willix*, 2011 WL 754862, at *6; *see also Hernandez v Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) ("Public policy favors a common fund attorneys' fee method in wage and hour class action litigation."). The trend in this

---

[6]     Fitapelli Decl. ¶ 57; Declaration of Richard J. Burch ("Burch Decl.") ¶ 12.

Circuit is to use the "percentage-of-recovery" method. *Willix*, 2011 WL 754862, at *6 (internal quotation marks and citation omitted); *see also Garcia*, 2012 WL 5305694, at *7 ("[t]he trend in this Circuit is to use the percent of the fund method to compensate attorneys in common fund cases"); *Puglisi*, 2015 WL 4608655, at *1 (awarding class counsel one-third of the common fund)

There are several reasons why courts prefer the percentage method over the lodestar method to compensate attorneys for successful prosecution of statutory claims.  First, the percentage method is closely aligned with market practices because it "is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." *Chavarria*, 875 F. Supp. 2d at 177.

 Here, Plaintiffs' Counsel's fees are also consistent with the retainer agreements entered into by the Named Plaintiff, which provide for counsel to receive one-third of any recovery. Fitapelli Decl. ¶ 60; *see also Garcia*, 2012 WL 5305694, at *8 (the court states that "reasonable, paying clients typically pay one-third of their recoveries under private retainer agreements" as support for approving class counsel's request for one-third of the settlement fund) (internal quotation marks and citation omitted); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving as reasonable a negotiated fee of one-third of the settlement amount, plus costs, in accordance with the retainer agreement; *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at *2-3 (E.D.N.Y. Nov. 21, 2014) (awarding one-third contingency fees as it was "consistent with [the] [p]laintiffs' retainer agreement with counsel and with the consent to sue form signed by all [of the] [p]laintiffs") (internal quotation marks and citations omitted).

Second, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable

hours.  Early settlements should be encouraged, "when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013); *see also Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending the plaintiffs' attorneys for negotiating early settlement).

Finally, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)).  Judges in the Eastern and Southern Districts of New York have consistently awarded 1/3 of the fund. *See, e.g.*, *Willix*, 2011 WL 754862, *6 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); *Karic v. Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (ENV) (CPL), 2015 WL 9433847, at n.9 (E.D.N.Y. Dec. 22, 2015), *report and recommendation adopted sub nom. Karic v. The Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (ENV) (CLP), 2016 WL 323673 (E.D.N.Y. Jan. 26, 2016) (listing cases); *Puglisi*, 2015 WL 4608655, at *1 (awarding $3.3 million in attorney's fees which is one-third of the total fund); *Kochilas v. Nat'l Merch. Servs., Inc.*, No. 14 Civ. 00311 (LB), 2015 WL 5821631, at *4 (E.D.N.Y. Oct. 2, 2015) (awarding one-third of total settlement fund); *Hernandez*, 306 F.R.D. at 102 (awarding one-third of $500,000 settlement); *Toure v. Amerigroup Corp.*, 10 CIV. 5391 (RLM), 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding one-third of $4.45 million fund in misclassification case).

**B.  *The Goldberger factors support an award of one-third of the common fund.***

In determining the reasonableness of fee applications in common fund cases, courts consider the following six factors set forth by the Second Circuit in *Goldberger v. Integrated Resources,*

*Inc.*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d 43, 50 (2d Cir. 2000). Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application. *Id.*

### 1. Class Counsel's Time And Labor.

Plaintiffs' Counsel spent significant effort to achieve a significant recovery in this case. Activities conducted by Plaintiffs' Counsel include: interviewing the named and opt-in Plaintiffs on numerous occasions throughout the course of the litigation; conducting a thorough investigation of clients' claims and documents; extensive legal research; obtaining and analyzing hundreds of pages of documents; obtaining conditional certification; completing a detailed, collective-wide damages analysis; preparing for and participating in a full-day mediation session; and successfully negotiating the terms of the settlement. Fitapelli Decl. ¶¶ 4-21.  In performing these tasks, Plaintiffs' Counsel expended 494 hours. *Id.* ¶ 35; Burch Decl. ¶¶ 9,10. These hours are reasonable for the length of time the matter has been in litigation and the complexity of the case. *Id*. Moreover, Plaintiffs' Counsel anticipates spending additional time in the future administering the settlement, responding to Prospective Collective Members' inquiries, and updating addresses for the Collective; the requested fee award is also meant to compensate for that time. *Id.* ¶ 58; *see also Willix*, 2011 WL 754862, *7 ("The fact that [c]lass [c]ounsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.") (citing *Khait*, 2010 WL 2025106, at *9).

### 2.   The Litigation's Magnitude And Complexity.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50.  "Courts have recognized that wage and hour cases involve complex legal issues." *Tiro*, 2013 WL 4830949, at * 13 (citation omitted); *see Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law.").

Plaintiffs' Counsel faced the risk that the Court would not have allowed the collective to remain certified through trial. Defendants would likely have moved for decertification and argued that individual differences in job titles, departments, groups, pay and duties prevent the matter from continuing through trial as a collective.

Accordingly, the magnitude, complexity and numerous issues involved in the resolution of Plaintiffs' claims favor Plaintiffs' Counsel's attorneys' fees request. *See Frank*, 228 F.R.D. at 188-89 (mixed questions of fact and law supported the court's award of attorneys' fees representing 38 percent of the common fund).

### 3.   The Risks Of Litigation.

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Tiro,* 2013 WL 4830949, at *13 (citing *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)). "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *Tiro,* 2013 WL 4830949, at *13. Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk.  Fitapelli Decl. ¶ 60.  Any lawyer undertaking representation of large numbers of effected employees in wage and hour actions inevitably must

15

be prepared to make a tremendous investment of time, energy and resources. *Id.* Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful. Fitapelli Decl. ¶ 61; *Chavarria*, 875 F. Supp. 2d at *178 (awarding class counsel one-third of the settlement fund as they "risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation"); *see also Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043, 2015 WL 5577713, at *16 (S.D.N.Y. Sept. 22, 2015) (granting class counsel's "substantial fee award" to "recognize the outsize risks that [class counsel] took in investing in [that] uncertain lawsuit").

Recognizing the "significant risks" undertaken by attorneys who work on contingency, the New York State Court of Appeals has also upheld contingency fees of one-third or higher, where such fee arrangements are embodied in executed retainer agreements. *See In re Lawrence*, 24 N.Y.3d 320, 341, 23 N.E.3d 965, 712 (2014) (upholding 40 percent contingency and stating that, "[a]s a general rule, we enforce clear and complete documents, like the retainer agreement, according to their terms.").

Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs' claims hinged on their ability to prove that they were misclassified as exempt employees. Moreover, even if Plaintiffs were able to establish that they were misclassified, there would still be issues related to the measure and calculation of damages.

While Plaintiffs believe that they could ultimately establish Defendants' liability, this would require significant factual development. Plaintiffs' Counsel is experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable

appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement Agreement alleviates these uncertainties. This factor therefore weighs in favor of approving the settlement.

### 4. Quality Of The Representation.

Plaintiffs' Counsel has significant experience prosecuting wage and hour class actions such as this one. *See e.g.*, *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012) ("Bruckner Burch and Fitapelli & Schaffer … have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law"); *see also*, *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173, at *3 (S.D.N.Y. July 31, 2014) (noting that "Fitapelli & Schaffer . . . will adequately represent the interests of the Class" when granting final approval); *Karic*, 2016 WL 1745037, at *9 (approving Fitapelli & Schaffer, LLP's request for one-third of the common fund); *Hadel v. Gaucho*, LLC, 193 F. Supp. 3d 243, 244 (S.D.N.Y. 2016) (same); *Tiro*, 2013 WL 2254551, at *3 ("Courts have repeatedly found F&S to be adequate class counsel in wage and hour class and collective actions."); G*irault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012) (noting that F&S has "years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Lovaglio v. W & E Hosp. Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019, at *2 (S.D.N.Y. July 6, 2012) (noting that F&S has "extensive experience in litigating wage and hour class actions").

17

### 5.   The Fee Is Reasonable In Relation To The Settlement.

As discussed *supra*, Plaintiffs' Counsel's request for one-third of the settlement fund "is reasonable and consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (citation and internal quotation marks omitted).

Plaintiffs' Counsel's work has led to the creation of a substantial fund, $2,490,000.  By Plaintiffs' Counsel's estimation, the $2,490,000.00 Settlement represents 74% of Plaintiffs' unliquidated overtime damages at 10 hours of overtime per week and calculated using the fluctuating workweek method. Fitapelli Decl. ¶ 26.  Thus, this factor weighs in favor of granting the requested fees.

### 6.   Public Policy Considerations.

"In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *Willix*, 2011 WL 754862, at *6.  Recently, Second Circuit Judge Chin, while presiding before the Southern District of New York, stated that "[t]here is commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016).

The FLSA and NYLL are designed to protect the wages of workers. *See, e.g.*, *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks and citation omitted). "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Willix*, 2011 WL 754862, at *6 (citations omitted).   "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.* (citing *Goldberger*, 209 F.3d at 51); *see also Toure*,

2012 WL 3240461, at *5 (same); *Chavarria*, 875 F. Supp. 2d at 177-78 ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose age claims might otherwise be too small to justify the retention of able, legal counsel."); *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").

 "Where relatively small claims can only be prosecuted through aggregate litigation, private attorneys general play an important role." *Willix*, 2011 WL 754862, at *6 (internal quotation marks and citation omitted).  Contingency fee awards like the one Plaintiffs' Counsel seeks here "provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *deMunecas v. Bold Food LLC*, No. 09 Civ. 0440 (DAB), 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010) (internal quotation marks and citation omitted).  Many individual litigants, including the Prospective Collective Members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation."  *Garcia*, 2012 WL 5305694, at *8.  Here, Plaintiffs' Counsel successfully negotiated a settlement that obtains significant monetary compensation for the Named Plaintiff, Opt-In Plaintiffs, and Prospective Collective Members.  Thus, this factor weighs in favor of Class Counsel.

**C.  *The lodestar cross check further supports an award to Plaintiffs' Counsel of one-third of the settlement fund.***

"Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Tiro*, 2013 WL

4830949, at *15 (citation omitted).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50.

Applying a lodestar analysis here would penalize Plaintiffs' Counsel for acting responsibly on behalf of the Class and obtaining a very favorable outcome.  In *Beckman*, the court noted that a relatively low lodestar amount (the fee award was about 6.3 times the lodestar) "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular[ly] where, as here, the settlement amount is substantial." 293 F.R.D. at 482.

With respect to the first two factors, Plaintiffs' Counsel spent 494 hours litigating and settling this matter. Fitapelli Decl. ¶ 57; Burch Decl. ¶ 9. The hours worked by Plaintiffs' Counsel result in a lodestar of approximately $235,479.00. Fitapelli Decl. ¶ 42. Moreover, "[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482 (internal quotation marks and citation omitted).  The multiplier that Plaintiffs' Counsel seeks will diminish over time as Plaintiffs' Counsel spends additional time working on this case, including preparing for and attending the final fairness hearing, answering Prospective Collective Members' questions, and answering questions from the Claims Administrator. Fitapelli Decl.   ¶ 45; *see also Toure*, 2012 WL 3240461, at *6 ("[t]he fact that [c]lass [c]ounsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request") (citation omitted)..

Plaintiffs' Counsel's request for one-third of the Fund (approximately 3.52 times their

"lodestar") is reasonable, particularly in light of the excellent result achieved for the Collective. Fitapelli Decl. ¶ 42. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. at 481; *see also*, *Yuzary*, 2013 WL 5492998, at *11   (granting attorneys' fees of approximately 7.6 times the lodestar); *Beckman*, 293 F.R.D. at 483 (granting attorneys' fees where multiplier 6.3); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"). Plaintiffs' Counsel's request for $830,000 is thus well within the range of reasonableness. With respect to the third and fourth factors, as described herein, Plaintiffs' Counsel believes that its performance was very good and the result it achieved for the Collective was excellent.

## V.     The Claims Administrator's Fees Are Reasonable.

The Parties retained the ILYM Group, a third-party settlement administrator, as the Claims Administrator for the Settlement. Fitapelli Decl.  ¶ 32.  The Claims Administrator's fees are estimated to be approximately $10,500.00 *Id.* ¶ 33.  Claims Administrator fees in this amount are routinely found to be reasonable, given the extensive work necessary to administer the Settlement. *See, e.g.*, **Ex. B**, *Blum*, No. 15 Civ. 1636 (GBD)(JCF), ECF No. 148, p. 3 (approving claims administration fees to be paid from the gross settlement fund); **Ex. C**, *Kucker*, No. 14 Civ. 9983 (DCF), ECF No. 156, p. 3 (approving claims administrator costs).  At this time, because the Claims Administrator's precise fees cannot be determined with certainty, Plaintiffs respectfully request that the Court approve all reasonable fees of the Claims Administrator, up to $10,500.00.

21

## <u>CONCLUSION</u>

Accordingly, Plaintiffs respectfully request that the Court: (1) approving the $2,490,000.00 settlement set forth in the Settlement Agreement and Release, and the releases set forth therein, and ruling that the Settlement Agreement is binding on all Parties, including the Named Plaintiff, Service Award Plaintiffs, Participating Collective Members, and Opt-In Plaintiffs; (2) ordering entry of the Approval Order attached as **Exhibit A** to the Settlement Agreement; (3) certifying the identified collective  for settlement purposes only; (4) approving the proposed Claim Form and Notices of Settlement and directing their distribution; (5) approving a Service Payment of $15,000.00 to Named Plaintiff  James Schaefer Jr. and a Service Payments of $10,000.00 to Opt-In Plaintiffs William Collier and Mitchell Roberts for their service to the collective; (6) approving Plaintiffs' Counsel's request for one-third of the Gross Settlement Fund for attorneys' fees and out-of-pocket costs and expenses; (7) approving the Settlement Claims Administrator's fees; (8) dismissing the case with prejudice; and (9) retaining jurisdiction as necessary for the purpose enforcing the terms of the Settlement Agreement.

Dated: New York, NY
        March 29, 2018

                                        Respectfully submitted,


                                        */s/  Joseph A. Fitapelli*
                                        Joseph A. Fitapelli

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Joseph A. Fitapelli
                                        Frank J. Mazzaferro
                                        28 Liberty Street, 30th Floor
                                        New York, New York 10005
                                        Telephone: (212) 300-0375

                                        **BRUCKNER BURCH PLLC**

Richard J. (Rex) Burch, *pro hac vice*
\* Pro Hac Vice  to be Filed
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788

*Attorneys for Plaintiffs*