# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**JAMES SCHAEFER, JR., on behalf of himself and all others similarly situated,**

**Plaintiff,**

-against-

**M&T BANK CORPORATION,**

**Defendant.**

No. 14 Civ. 6622 (PGG)

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between, on the one hand, James Schaefer, Jr. (the "Named Plaintiff"), individually and on behalf of a settlement collective he seeks to represent and, on the other hand, Manufacturers and Traders Trust Company ("M&T"), which was named as "M&T Bank Corporation" in the Complaint (collectively, "M&T" or "Defendant").

## 1.     RECITALS AND BACKGROUND

WHEREAS, on August 19, 2014, the Named Plaintiff filed a Complaint on behalf of himself and others alleged to be similarly situated, asserting claims against Defendant under the Fair Labor Standards Act ("FLSA") and New York Labor Law;

WHEREAS, on August 19, 2015, the Court granted conditional certification of a collective under the Fair Labor Standards Act and thereafter notice was issued to prospective collective members;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Plaintiffs, Defendant, and the Releasees;

WHEREAS, following an exchange of data and documents, a full-day mediation session with an experienced employment law mediator, and protracted post-mediation settlement negotiations, the Parties reached a settlement resulting in this Agreement;

WHEREAS, the Parties have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, M&T and its parents, subsidiaries, affiliates, and employees deny all liability in this action and deny all substantive allegations in the Plaintiffs' complaint, and M&T Bank Corporation denies that it is an employer of the Plaintiffs;

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the Plaintiffs' claims in the Litigation, and, based upon Plaintiffs' Counsel's analysis, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or that it might result in a recovery that is less favorable than this settlement, and that such recovery would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

**2.     DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1     **Agreement.**  "Agreement" means this Settlement Agreement and Release.

2.2     **Approval Order.**  "Approval Order" means the Order and Final Judgment of Dismissal With Prejudice attached hereto as **Exhibit A** approving the terms and conditions of this Agreement, as may be modified by the Court, provided that any modifications do not materially alter terms of this Agreement.

2.3     **Bar Date.** "Bar Date" shall mean the last date by which a Prospective Collective Member must mail and post-mark a Claim Form in order to participate in the settlement.

2.4     **Claim Form.** "Claim Form" shall mean the form, a copy of which is attached hereto as **Exhibit B**, that the Prospective Collective Members must sign and return post-marked by the Bar Date.

2.5     **Court.**  "Court" means the United States District Court, Southern District of New York.

2.6     **Defendant or M&T.** "Defendant" or "M&T" means Manufacturers and Traders Trust Company ("M&T"), which was named as M&T Bank Corporation in the Litigation.

2.7     **Defendant's Counsel.**  "Defendants' Counsel" means Robert Fluskey, Esq., Hodgson Russ LLP, 140 Pearl Street, Suite 100, Buffalo, NY 14202.

2.8     **Effective Date**.  The "Effective Date" of this Agreement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of the Approval Order, if there are no appeals; or (b) if there is an appeal of the Court's Approval Order, the day after all appeals are finally resolved in favor of final approval.

2.9     **Employer Payroll Taxes.**  "Employer Payroll Taxes" means all taxes an employer is required to pay arising out of or based upon the payment of employment compensation in this settlement, including employer-side FICA, FUTA, and SUTA obligations.

2.10    **Litigation/Lawsuit.**  "Litigation" or "Lawsuit" means the matter titled *Schaefer, et al. v. M&T Bank Corporation*, No. 14 Civ. 6622 (PGG) (S.D.N.Y. August 19, 2014).

2.11    **Named Plaintiff.** "Named Plaintiff" means James Schaefer, Jr.

2.12    **Notice Packets.** "Notice Packets" refers collectively to the Notice of Settlement and Claim Form to be mailed to Prospective Collective Members and the Notice of Settlement to be mailed to Opt-In Plaintiffs by the claims administrator.  The purpose of the Notice Packets is to inform Prospective Collective Members and Opt-In Plaintiffs of the settlement, the approximate amount of their individual settlement awards, the material provisions of this Agreement, the procedure for submitting a Claim Form, and their rights with respect to this Agreement. A copy of the Notice Packets are attached hereto as **Exhibit C**, Prospective Collective Member Notice; **Exhibit D**, Opt-In Plaintiff Notice.

2.13    **Opt-In Plaintiffs**.  "Opt-In Plaintiffs" means the individuals who opted in to the Litigation as of January 1, 2017.  The Opt-In Plaintiffs are listed on the attached **Exhibit E**.

2.14    **Participating Collective Members.** "Participating Collective Members" are all Prospective Collective Members who timely return a claim form. Opt-In Plaintiffs are automatically deemed to be Participating Collective Members.

2.15     **Parties**.  "Parties" means Named Plaintiff, Opt-In Plaintiffs, Prospective Collective Members, and Defendant.

2.16    **Plaintiffs.**   "Plaintiffs" means the Named Plaintiff, Prospective Collective Members, and the Opt-In Plaintiffs.

2.17    **Plaintiffs' Counsel.**  "Plaintiffs' Counsel" means Joseph A. Fitapelli, Esq., Frank J. Mazzaferro, Esq., Fitapelli & Schaffer, LLP, 28 Liberty Street, 30th Floor, New York, NY 10005, (212) 300-0375, and Richard J. Burch, Esq., Bruckner Burch PLLC, 8 Greenway Plaza, Ste 1500, Houston, Texas 77046, (713) 877-8788.

2.18    **Prospective Collective Members/Covered Employees.**  "Prospective Collective Members" or "Covered Employees" means the current and former M&T employees indicated on the attached **Exhibit F**.

2.19    **Qualified Settlement Fund or QSF.**  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator into which the GSF shall be deposited.

2.20    **Released Claims**.  "Released Claims" means any and all wage and hour claims, including Fair Labor Standard Act claims and state law wage and hour claims, relating

back to the full extent of any federal, state, or local statutes of limitations and continuing through December 31, 2017, including all wage and overtime compensation claims and recordkeeping claims and claims for failure to provide wage notices and wage statements against Manufacturers and Traders Trust Company or M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees and assigns, as well as all related state and federal claims for wages, penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. Released Claims, as specifically applied to Prospective Collective Members and Opt-In Plaintiffs, is addressed in Section 5 of this Agreement.

2.21   **Relevant Statutory Period.**  The "Relevant Statutory Period" means, for Prospective Collective Members and Opt-In Plaintiffs who worked in New York, the period of time from on or after August 19, 2008 through December 31, 2017. The "Relevant Statutory Period" means, for Prospective Collective Members and Opt-In Plaintiffs who worked outside New York, the period of time from June 4, 2012 through December 31, 2017.

2.22   **Settlement Claims Administrator.** The "Settlement Claims Administrator" shall be ILYM Group, Inc.

2.23   **Service Award Plaintiffs.** "Service Award Plaintiffs" shall mean the Named Plaintiff and Opt-In Plaintiffs William Collier and Mitchell Roberts.

2.24   **Gross Settlement Fund or GSF.**  "Gross Settlement Fund" or "GSF" means Two Million Four Hundred Ninety Thousand Dollars and Zero Cents ($2,490,000.00). The GSF is the maximum amount Defendant shall pay to settle the Litigation as set forth in this Agreement, assuming the total number of Prospective Collective Members and Opt-In Plaintiffs is not more than 244 individuals. This does not include Employer Payroll Taxes, which Defendant shall pay separately from the GSF.

2.25   **Net Settlement Fund.**  "Net Settlement Fund" means the Gross Settlement Fund less: (1) the Settlement Claims Administrator's fees and costs; (2) the one-third of the GSF (*i.e.*, $830,000.00) allocated to Plaintiffs' Counsel for litigation fees; (3) reimbursement of the litigation costs and expenses of Plaintiffs' Counsel not to exceed $10,000.00; and (4) the Court-approved Service Awards.

2.26   **Settlement Checks.**  "Settlement Checks" means the set of checks issued to Participating Collective Members and Opt-In Plaintiffs for their share of the Net Settlement Fund calculated in accordance with this Agreement.

3.   **INITIAL PROCEDURAL ISSUES**

3.1   **Binding Agreement.**  This Agreement is a binding agreement and contains all material terms.

3.2   **Retention and Responsibilities of the Settlement Claims Administrator.**  Plaintiffs shall retain the Settlement Claims Administrator.

(A)   The Settlement Claims Administrator shall be responsible for, among other things, preparing, printing and mailing the Notice Packets as directed by the Court; updating addresses with the U.S. Postal Service's National Change of Address ("NCOA") database; making commercially reasonable searches for new addresses for Prospective Collective Members and Opt-In Plaintiffs whose Notice Packets are returned as undeliverable with no forwarding address; determining the amount of payments due to each Prospective Collective Member and Opt-In Plaintiff in accordance with this Agreement, along with the amount of all payroll tax deductions to be withheld; determining the amount of the employer's share of payroll taxes; receiving and logging Claim Forms returned; providing weekly status reports to Defendant's Counsel and Plaintiffs' Counsel regarding the status of the mailing of the Notice Packets, the claims administration process, and the identity and number of Participating Collective Members and Opt-In Plaintiffs; cutting and mailing Settlement checks to Participating Collective Members and Opt-In Plaintiffs; cutting and mailing checks for Court-approved Service Awards to the Service Award Plaintiffs, as approved by the Court; cutting and mailing Court-approved attorneys' fees and costs to Plaintiffs' Counsel; printing and providing Forms W-2 and 1099  as required under this Agreement and applicable law; and for such other tasks set forth in this Agreement  or as to which the Parties mutually agree.

(B)   The Settlement Claims Administrator shall also establish, control, and maintain the QSF according to the terms of this Agreement, and be responsible for filing all required tax returns for the QSF and paying any taxes due.

(C)   The Settlement Claims Administrator's fees shall come out of the GSF and be paid from the QSF upon completion of all duties required to be performed by the Settlement Claims Administrator under the terms of this Agreement and any Court orders.

(D)   The Parties agree to cooperate with the Settlement Claims Administrator, and to provide accurate information necessary to send the Notice Packets and calculate settlement awards, and send Settlement Checks in accordance with the terms of this Agreement.

**3.3   Approval Order and Dismissal**

(A)   Plaintiffs' Counsel will submit to the Court an unopposed motion to enter the Approval Order.  Defendant's counsel will be afforded 5 days to review and comment on the motion.  The motion shall request that the Court: (1) approve this Agreement as a fair, reasonable, and adequate settlement of a bona fide dispute, and rule that it is binding on all Parties, including Named Plaintiff, Service Award Plaintiffs, Participating Collective Members and Opt-In Plaintiffs; (2) order the Settlement Claims Administrator to perform all duties described herein; (3) order attorneys' fees and costs, as described herein, to be paid to Plaintiffs' Counsel, and Service Awards, as described herein; (4) order the dismissal with prejudice of

all claims asserted or that could have been asserted by the Named Plaintiff, Service Award Plaintiffs, Participating Collective Members, and Opt-In Plaintiffs; (5) order entry of the Approval Order in accordance with this Agreement; (6) order dismissal of the Litigation with prejudice; and (7) retain jurisdiction as necessary for the purpose of enforcing the terms of this Agreement.

(B)    If the Court fails to enter the Approval Order, the Parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the Court's decision; or (2) renegotiate the settlement and seek Court approval of the renegotiated settlement.

(C)    If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

**3.4    Provision of Information to Settlement Claims Administrator**.  No later than two (2) business days after the Effective Date, M&T will provide the Settlement Claims Administrator with a list, in electronic form, of all Prospective Collective Members and Opt-In Plaintiffs containing the following information: name, last known address, last known phone number(s) (to the extent known), last known email address(es) (to the extent known), social security number, location(s) worked, and dates of employment within the relevant titles during the Relevant Statutory Period.  For Prospective Collective Members, the relevant titles include Network Computing Analyst I, Network Computing Analyst II, Staff Specialist, and Senior Network Computing Analyst.  For Opt-In Plaintiffs, the relevant titles include Network Computing Analyst I, Network Computing Analyst II, Staff Specialist, Senior Network Computing Analyst, and Senior Staff Specialist.  M&T will provide Plaintiffs' Counsel with the aforementioned list, but without social security numbers.

**3.5    Notice Packet, Settlement Checks, Releases and Settlement Check Cashing Period**

(A)    No later than twenty (20) days after the Effective Date, the Settlement Claims Administrator shall issue each Prospective Collective Member and Opt-In Plaintiff a Notice Packet and Claim Form.  The Notice shall advise each Prospective Collective Member and Opt-In Plaintiff of the approximate amount of his/her settlement award.  Prior to the mailing of the Notice Packets, the Settlement Claims Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database and other commercially reasonable means, and shall mail the Notice Packet and Claim Form to any updated address obtained therefrom.

(B)    The Settlement Claims Administrator shall obtain the correct address of any Prospective Collective Members and Opt-In Plaintiffs for whom a Notice Packet is returned as undeliverable.  The Settlement Claims Administrator will notify Plaintiffs' Counsel and Defendant's Counsel of any Notice Packet sent to a Prospective Collective Member or Opt-In Plaintiff that is returned as undeliverable after mailing, and thereafter perform a skip trace using social

security numbers, among other information, to ascertain correct mailing information to effect a second mailing.  In the event of such re-mailing, the Claim Form must be postmarked or received by email or facsimile by the Settlement Claims Administrator on or before the later of fifteen (15) days from the date of re-mailing, or the Bar Date.

(C)     In the event any Claim Form is timely submitted but does not contain a signature or sufficient information to identify the Prospective Collective Member, the Settlement Claims Administrator shall within five (5) days of receipt provide the Prospective Collective Member with a letter requesting the information that was not provided and give the Prospective Collective Member until the later of fifteen (15) days from the date of mailing of said letter or the Bar Date to provide the requested information ("cure").  To be timely, the revised Claim Form with the signature or sufficient identifying information must be postmarked or received by email or facsimile by the Settlement Claims Administrator on or before the later of fifteen (15) days of the date the cure request letter was mailed or the Bar Date.

(D)     In the event of any dispute over a Prospective Collective Member's dates of employment and/or the late submission of any Claim Form, the Parties will meet and confer in good faith in an effort to resolve the dispute.  In the case of a Claim Form received by mail after the Bar Date that is not postmarked, it shall be assumed that such Claim Form was timely submitted if received by the Settlement Claims Administrator within ten (10) days after the Bar Date.  Further, to the extent a claim is received within ten (10) days of the Bar Date for which there is an objectively reasonable, good faith explanation to support the untimely receipt, it will be presumed that the Settlement Claims Administrator will accept same. With respect to any disputes over weeks worked, the Settlement Claims Administrator shall request that Defendant check its records and clarify weeks worked and will assume M&T's records to be valid, except that the Prospective Collective Members may submit evidence to rebut that presumption.

(E)     Prospective Collective Members have until sixty (60) days from the date the Notice Packet and Claim Forms are mailed (the "Bar Date") to return completed Claim Forms to the Settlement Claims Administrator and become Participating Collective Members entitled to receive their share of the Net Settlement Fund. Opt-In Plaintiffs are automatically deemed to be Participating Collective Members as a result of their previous filing of a consent to sue form. Claim Forms postmarked or otherwise received by the Settlement Claims Administrator by the Bar Date shall be considered timely.  However, in the event of a re-mailing or cure letter, the Claim Form must be postmarked or received by email or facsimile by the Settlement Claims Administrator on or before the later of fifteen (15) days from the date of re-mailing or cure letter, or the Bar Date.

(F)     Within eighteen (18) days of the Bar Date, the Settlement Claims Administrator shall: (a) provide to Defendant's Counsel and Plaintiffs' Counsel a list of Participating Collective Members and shall provide electronic copies of all timely

received, executed, and completed Claim Forms; and (b) provide to Defendant's Counsel the total amount due to the Participating Collective Members and any additional amounts needed to pay Participating Collective Members.  In addition, redacted copies of all timely received, executed, and completed Consent to Join and Release Forms shall be provided to Counsel for Plaintiffs.  Within fourteen (14) days after the Bar Date, Defendant shall forward such additional funds to the Settlement Claims Administrator.

(G)     Within forty (40) days after the Bar Date, the Settlement Claims Administrator shall issue each Participating Collective Member and Opt-In Plaintiff a Cover Letter and Settlement Check from the Net Settlement Fund in accordance with the terms of this Agreement.

(H)     The end of the time period for a Participating Collective Member and Opt-In Plaintiff to endorse and cash and/or deposit his/her Settlement Check shall be one hundred twenty (120) days after the day on which the Settlement Claims Administrator mails a Settlement Check to a Participating Collective Member or Opt-In Plaintiff ("Settlement Check Cashing Period").  The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Settlement Check to any Participating Collective Member or Opt-In Plaintiff, notify Plaintiffs' Counsel and Defendant's Counsel by email of the precise date of the end of the Settlement Check Cashing Period.

(I)     No later than one hundred thirty (130) days after the last Settlement Check is mailed to a Participating Collective Member or Opt-In Plaintiff, the Settlement Claims Administrator shall provide M&T with a signed copy of each Settlement Check that has been cashed by a Participating Collective Member or Opt-In Plaintiff, redacting any bank account information.

## 4.     SETTLEMENT TERMS

## 4.1   Gross Settlement Fund and Funding of Qualified Settlement Fund

(A)     M&T agrees to pay a maximum Gross Settlement Fund of Two Million Four Hundred Ninety Thousand Dollars and Zero Cents ($2,490,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Participating Collective Members and Opt-In Plaintiffs, any Court-approved Service Awards, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.  M&T will not be required to pay more than Two Million Four Hundred Ninety Thousand Dollars and Zero Cents ($2,490,000.00) under the terms of this Agreement, except that Defendant shall be responsible for paying, in addition to the GSF, the employer's share of all payroll taxes for payments made to Participating Collective Members and Participating Opt-In Plaintiffs.

(B)    M&T shall pay fifty percent (50%) of the GSF to the Settlement Claims Administrator for deposit into the QSF no later than thirty (30) days after the Effective Date.  Within eighteen (18) days following the Bar Date, the Settlement Administrator shall notify M&T of any additional funds needed from M&T to pay Participating Collective Members and Opt-In Plaintiffs who have opted in the settlement by filing a Claim Form.  M&T shall forward such additional funds as necessary within fourteen (14) days of such notice.

(C)    Any uncashed Settlement Checks, Service Awards and all other amounts remaining in the QSF one hundred twenty (120) days from the date of the mailing of the last Settlement Check to a Participating Collective Member shall revert to M&T.

**4.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    Plaintiffs' Counsel will petition the Court for an award of attorneys' fees in the amount of one-third of the QSF (*i.e.*, $830,000.00), and for reimbursement of their litigation costs and expenses not to exceed $10,000.00 to be paid from the QSF.  After depositing this amount with the Settlement Claims Administrator for the QSF set forth herein, M&T shall have no additional liability for Plaintiffs' Counsel's attorneys' fees and costs.  M&T will not contest the amount sought as attorneys' fees and costs.

(B)    Any fees or costs sought by Plaintiffs' Counsel but not approved by the Court shall revert to M&T.

(C)    The attorneys' fees and costs shall be paid from the QSF forty-eight (48) days after the Effective Date.

**4.3    Service Awards**

(A)    The Named Plaintiff will apply to the Court to receive Fifteen Thousand Dollars and Zero Cents ($15,000.00) as a Service Award. Opt-In Plaintiffs William Collier and Mitchell Roberts will apply to the Court to receive Ten Thousand Dollars and Zero Cents ($10,000.00) each as a Service Award.  M&T will not join in that application.  Named Plaintiff, William Collier, and Mitchell Roberts are collectively referred to as "Service Award Plaintiffs."

(B)    To be eligible for a Service Award payment, William Collier and Mitchell Roberts will execute a Release and Waiver. A copy of this Release and Waiver is attached as **Exhibit G** to this Agreement. Such settlement instruments must be executed to be eligible for a Service Payment.  Should all or part of any Service Award sought by William Collier and Mitchell Roberts not be approved by the Court or accepted by William Collier and Mitchell Roberts, the sum shall revert to the Net Settlement Fund .

(C)    Service Award Plaintiffs William Collier and Mitchell Roberts agree to the

Release and Waiver attached hereto as **Exhibit G** in consideration for receipt of a Service Award.  Should the Court deny any application for a Service Award and/or William Collier or Mitchell Roberts do not execute **Exhibit G**, that individual shall be subject only to the release outlined in Section 5.1(E) of this Agreement.

(D)  In exchange for his Service Award, Named Plaintiff James Schaefer, Jr. agrees to the release set forth in Section 5.1(G) of this Agreement.

(E)  Approved Service Awards shall be paid from the QSF forty-eight (48) days after the Effective Date of the settlement.

**4.4  Net Settlement Fund and Allocation to Prospective Collective Members and Opt-In Plaintiffs.**

(A)  The allocation to Prospective Collective Members and Opt-In Plaintiffs will be made from the Net Settlement Fund.

(B)  The Claims Administrator shall allocate the amount in the Net Settlement Fund pro rata among all Prospective Collective Members and Opt-In Plaintiffs pursuant to a "points" formula as follows:

(1)  Prospective Collective Members shall be assigned one (1) point for each week worked during the Relevant Statutory Period as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, and as a Senior Network Computing Analyst.

(2)  Opt-In Plaintiffs shall be assigned one (1) point for each week worked during the Relevant Statutory Period as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, and as a Senior Network Computing Analyst.

(3)  Opt-In Plaintiffs shall also be assigned one half (.5) of a point for each week worked as a Senior Staff Specialist during the Relevant Statutory Period.

(C)  To calculate the portion of the Net Settlement Fund that shall be apportioned to each Prospective Collective Member and/or Opt-In Plaintiff ("Allocated Amount"), the Claims Administrator shall (i) determine the sum of the total number of points for all Prospective Collective Members and Opt-In Plaintiffs; (ii) divide the Net Settlement Fund by the sum calculated in subsection (i) of this Paragraph to find the amount allocated to each point; and (iii) multiply the amount allocated to each point by the number of points assigned to each Prospective Collective Member and  Opt-In Plaintiff  to determine each Prospective Collective Member's and Opt-In Plaintiff's Allocated Amount.

**4.5**    **Tax Characterization.**

(A)    Settlement Checks paid to Participating Collective Members and Opt-In Plaintiffs shall be allocated 50% to W-2 wage payments subject to withholdings, and 50% to 1099 non-wage payments for interest and liquidated damages.  Service Awards shall be allocated 100% to W-2 wage payments subject to withholdings;

(B)    The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Participating Collective Members including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Participating Collective Members and Service Award Plaintiffs and for remitting all taxes withheld to the appropriate authorities.

**5.**    **RELEASE**

**5.1**    **Release of Claims.**

(A)    Participating Collective Members who endorse or deposit/cash their Settlement Check will fully release Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under  state and local law, including claims for unpaid overtime wages, recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any weeks worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, or  as a Senior Network Computing Analyst.

(B)    All Settlement Checks mailed to Participating  Collective Members shall contain, on the back of the check, the following limited endorsement:

**FINAL RELEASE OF CLAIMS:**

By endorsing, depositing, or cashing this check, I release Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under state and local law, including claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any weeks I worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, or as a Senior Network Computing Analyst.

_____
Signature

(C)     If a Participating Collective Member does not deposit or cash his/her Settlement Check, he or she will release no claims.  Any Participating Collective Member who cashes or deposits his/her Settlement Check will release the claims as set forth in Paragraph 5.1(A)-(B) of this Agreement.

(D)     Opt-In Plaintiffs who endorse or deposit/cash their Settlement Check will fully release Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under  state and local law, including claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any weeks worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, as a Senior Network Computing Analyst, or as a Senior Staff Specialist.

(E)     All Settlement Checks mailed to Opt-In Plaintiffs  shall contain, on the back of the check, the following limited endorsement:

**FINAL RELEASE OF CLAIMS:**

By endorsing, depositing, or cashing this check, I release Manufacturers and Traders Trust Company and M&T Bank Corporation, and their  current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under state and local law, including claims for unpaid overtime wages, recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any weeks I worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, as a Senior Network Computing Analyst, or as a Senior Staff Specialist.

_____
Signature

(F)     If an Opt-In Plaintiff does not deposit or cash his/her Settlement Check, he or she will release no claims.  Any Opt-In Plaintiff who cashes or deposits his/her Settlement Check will release claims as set forth in Paragraph 5.1(D)-(E) of this Agreement.

(G)    In consideration for a Service Award approved, accepted, and received, Named Plaintiff James Schaefer, Jr., on behalf of himself and his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Manufacturers and Traders Trust Company and M&T Bank Corporation , and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees")of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which he  may have against Releasees as of the date of court approval of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq; the New York Labor Law; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.;  ; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code including, without limitation, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-and-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of the Court's approval of this Agreement.

(H)    If the Court denies the Named Plaintiff's application for a Service Award, or if the Named Plaintiff chooses not to accept a Service Award awarded by the Court, the General Release of Section 5.1(G) shall be null and void, and Named Plaintiff shall only be subject to the release outlined in Section 5.1(E) of this Agreement.

**5.2**    **Non-Publication.**  Plaintiffs' Counsel and the Named Plaintiff agree to make no statement to the media relative to this settlement and agree to make no press or media release and no statements on the Internet or social media relative to this settlement.

## 6. INTERPRETATION AND ENFORCEMENT

**6.1** **No Admission.**  Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns, deny all liability in this Lawsuit and deny all substantive allegations in the Plaintiffs' complaint. M&T Bank Corporation denies that it is an employer of the Plaintiffs.  Nothing relating related to this Agreement, shall be cited as, construed as, construed to be, admissible as, or deemed an admission by Manufacturers and Traders Trust Company or M&T Bank Corporation of any liability or wrongdoing.

**6.2** **Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.3** **No Assignment.**  Plaintiffs' Counsel, and the Service Award Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**6.4** **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.5** **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff and all Participating Collective Members who endorse and/or cash and/or deposit their Settlement Check, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**6.6** **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.7** **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.8** **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**6.9     Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**6.10    Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**6.11    Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

**6.12    Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by any other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.13    When Agreement Becomes Binding; Counterparts.**  This Agreement shall become valid and binding upon its complete execution.  The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**6.14    Facsimile, Electronic and Email Signatures.**  Any signature made and transmitted by facsimile, email or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile or email.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "4" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS ATTORNEYS, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE MAY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**WE AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

JAMES SCHAEFER, JR.

Mar 23, 2018
_____       By: _James M. Schaefer Jr._
Date                                  James M. Schaefer Jr. (Mar 23, 2018)
                                      James Schaefer Jr.



Manufacturers and Traders Trust Company

_____       By: _____
Date                                  Name:
                                      Title:

16

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

JAMES SCHAEFER, JR.

By: _____

Date

James Schaefer Jr.

Manufacturers and Traders Trust Company

3/29/2018

Date

By: _____

Name:

Title:

16

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JAMES SCHAEFER, JR., on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | No. 14 Civ. 6622 (PGG) |
| -against- | |
| **M&T BANK CORPORATION,** | |
| **Defendant.** | |

**ORDER AND FINAL JUDGMENT ON UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT OF
<u>COLLECTIVE ACTION AND DISMISSING ACTION WITH PREJUDICE</u>**

This matter came before the Court upon Plaintiffs' Unopposed Motion for Approval of Settlement of Collective Action and Dismissing Action with Prejudice. Having reviewed the Parties' settlement papers, it is hereby **ORDERED AND ADJUDGED** as follows:

1.　　Plaintiffs' Motion is GRANTED.  The Court finds that the Parties' Settlement for $2,490,000 in this action is fair, reasonable and just.

2.　　Unless otherwise defined herein, all terms used in this Order and Final Judgment will have the same meaning as defined in the Settlement Agreement and Release (the "Agreement").

3.　　The collective as defined in the Parties' Agreement is certified for settlement purposes only and the claims administrator is authorized to send Notice to Prospective Collective Members and Opt-In Plaintiffs of their opportunity to participate in the Settlement.

4.　　The Agreement, and releases therein, are approved.

5.　　The Notice Packets for Prospective Collective Members and Opt-In Plaintiffs are approved, and the Claim Form for Prospective Collective Members is approved.

6.      Plaintiffs' Counsel's request for attorneys' fees, costs, and expenses is approved.

7.      The Service Award Plaintiffs' requests for Service Awards are approved.

8.      The Release and Waiver Agreement for Service Award Plaintiffs is approved.

9.      The Claims' Administrator's fee is approved.

10.     No later than two business days after the Effective Date of the Settlement Agreement and Release, M&T will provide the Settlement Claims Administrator with a list, in electronic form, of all Prospective Collective Members and Opt-In Plaintiffs as identified in Exhibits E and F of the Settlement Agreement with the following information: name, last known address, last known phone number(s) (to the extent known), last known email address(es) (to the extent known), social security number, location(s) worked, and dates of employment within the relevant titles during  Relevant Statutory Period.  M&T will provide Plaintiffs' Counsel with the aforementioned list, but without social security numbers.

11.      No later than twenty (20) days after the Effective Date of the Settlement Agreement and Release, the Claims Administrator shall issue each Prospective Collective Member and Opt-In Plaintiff a Notice Packet.

12.     Prospective Collective members will have sixty (60) days from the date the Notice Packet and Claim Forms are mailed to post-mark and mail the Claim Form (hereinafter "Bar Date").  Opt-In Plaintiffs are automatically deemed Participating Collective Members and need not submit a Claim Form.

13.     Within forty (40) days after the Bar Date, the Claims Administrator shall issue checks to Collective Members who properly returned a Claim Form and all Opt-In Plaintiffs. Only those Collective Members and Opt-In Plaintiffs who endorse their settlement checks are

deemed to release any claims against Manufacturers and Traders Trust Company and Defendants.

14.     Nothing relating to this Order, or any communications, papers, or orders related to the Agreement, shall be cited as, construed as, construed to be, admissible as, or deemed an admission by Manufacturers and Traders Trust Company or M&T Bank Corporation of any liability or wrongdoing or the proprietary of class certification. There has been no determination by any Court as to the merits of the claims asserted in this action or as to whether a class or collective should be certified on the merits.

15.     This action is hereby dismissed with prejudice.

16.     This Court will retain jurisdiction as necessary to enforce the Settlement.

The case is closed and all pending motions are denied as moot.


SO ORDERED on this ___ day of _____ , 2018.


_____
                     Hon. Paul G. Gardephe

3

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**JAMES SCHAEFER, JR., on behalf of himself
and all others similarly situated,**

**Plaintiff,**

**-against-**

No. 14 Civ. 6622 (PGG)

**M&T BANK CORPORATION,**

**Defendant.**

---

## CLAIM FORM AND CONSENT TO JOIN SETTLEMENT FOR PROSPECTIVE COLLECTIVE MEMBER

**The form must be returned to the Settlement Claims Administrator so that it is postmarked or
received by facsimile or email by [60 DAYS FROM DATE OF MAILING].**

I hereby consent and opt-in to become a plaintiff for settlement purposes in a lawsuit brought under the Fair Labor Standards Act ("FLSA"), *Schaefer v. M&T Bank*, No. 14 Civ. 6622 (PGG). I consent and agree to be bound by any adjudication of this action by the Court. I further agree to be bound by the collective action settlement approved by the Court. I hereby designate the law firms of Fitapelli & Schaffer, LLP and Bruckner Burch PLLC to represent me in this action. I understand that if I return this Claim Form and endorse and negotiate my settlement check, I fully release Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under state and local law, including claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any weeks I worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, or as a Senior Network Computing Analyst.

---

_____     _____     _____

Name (print)                        Signature                           Date


_____     _____

Street Address                      Telephone Number


_____     _____

City, State and Zip Code            Email Address

7

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**JAMES SCHAEFER, JR., on behalf of
himself and all others similarly situated,**

     **Plaintiff,**

  **-against-**

**M&T BANK CORPORATION,**

**Defendant.**

---

No. 14 Civ. 6622 (PGG)

**OFFICIAL COURT NOTICE OF PROPOSED COLLECTIVE
ACTION SETTLEMENT AND DISMISSAL OF ACTION TO PROSPECTIVE
COLLECTIVE MEMBER**

**YOU MAY BE ENTITLED TO A PAYMENT RESULTING FROM THE SETTLEMENT
OF A COLLECTIVE ACTION LAWSUIT.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- A settlement (the "Settlement") has been reached in the lawsuit currently pending in the United States District Court for the Southern District of New York, entitled *Schaefer v. M&T Bank Corporation* (the "Lawsuit").  The Lawsuit alleges that Manufacturers and Traders Trust Company ("M&T" or "Defendant") misclassified certain Information Technology infrastructure employees as exempt from overtime under federal and state laws and failed to pay them overtime compensation for all hours worked in excess of 40 per workweek.

- Based on the formula in the settlement agreement discussed in section 5 below, the total individual settlement amount you will be entitled to receive is estimated to be approximately **$_____**, subject to deductions for applicable taxes.

- This Notice pertains to any individual who was included in the collective action Settlement, and is therefore a "Covered Employee" and "Prospective Collective Member."

- **You are receiving this Notice because You are a Prospective Collective Member** who was employed by M&T in New York on or after August 19, 2008 through December 31, 2017, or in states other than New York on or after June 4, 2012 through December 31, 2017 ("Relevant Statutory Period").

As described more fully below, to participate in the Settlement, you must mail a properly completed Claim Form to the Settlement Claims Administrator so that it is post-marked

or received by facsimile or email by **[60 DAYS FROM DATE OF MAILING].**  If you fail to timely return a Claim Form post-marked or otherwise received by **[60 DAYS FROM DATE OF MAILING],** you will not receive any money from the Settlement.

**Your legal rights may be affected, and you have a choice to make now:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CLAIM FORM** | By returning a properly completed Claim Form you agree to participate in the Settlement, receive a monetary settlement payment, and release your claims. |
| **DO NOT RETURN THE CLAIM FORM** | If you do not wish to participate in or be bound by the Settlement, you should not return the Claim Form.  If you do not timely return a properly completed Claim Form postmarked or otherwise received by [date 60 days from mailing of Notice], you will not receive a monetary settlement payment and will not release your claims.  However, as part of the Settlement, the Lawsuit has been discontinued. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

## BASIC INFORMATION

1.   **WHAT IS A COLLECTIVE ACTION?**

In a "Collective Action," one or more people called representative plaintiffs sue on behalf of people who have similar claims.  However, the other employees who have similar claims do not become part of the Collective Action until they "opt in" to the Collective Action. You may "opt in" to the Lawsuit and become a "Participating Collective Member" by returning the enclosed Claim Form.  If you timely return the enclosed Claim Form you will receive a settlement check.

2.   **WHAT IS THE PURPOSE OF THIS NOTICE?**

The purpose of this Notice is to inform you of your rights under the settlement agreement resolving the Lawsuit.

3.   **WHAT IS THIS CASE ABOUT?**

The Lawsuit alleges that Defendant violated federal and state labor laws by failing to provide Prospective Collective Members and Opt-In Plaintiffs with overtime pay.

Defendant denies these allegations and believes that Prospective Collective Members and

Opt-In Plaintiffs received all monies to which they were entitled.  However, to avoid the burden, expense, and uncertainty of continuing litigation, the parties have agreed to this Settlement.

**4.      WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?**

The Parties have agreed to settle this matter for the total sum of Two Million Four Hundred Ninety Thousand Dollars and Zero Cents ($2,490,000.00).

**5.      HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?**

Defendant will pay up to $2,490,000.00 to settle the Lawsuit ("Gross Settlement Fund"). The following payments and expenses will be deducted from the Gross Settlement Fund prior to the allocation of the settlement funds to Collective Members:

- Service Award:  The Court has approved Service Award payments in the aggregate amount of $_____.

- Attorneys' Fees and Costs:  The Court has approved payment of attorneys' fees of $_____ to Plaintiffs' Counsel plus an additional $_____ for their actual expenses and costs.

- Administration Expenses:  $_____ will be paid the Settlement Claims Administrator to cover any costs associated with the administration of notice to the Collective Members and the issuance of payments to Participating Collective Members.

After these deductions, the Settlement Claims Administrator shall allocate the remaining settlement funds (the "Net Settlement Fund") to Prospective Collective Members and Opt-In Plaintiffs as follows:

(1)  Prospective Collective Members shall be assigned one (1) point for each week worked during the Relevant Statutory Period as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, and as a Senior Network Computing Analyst.

(2) Opt-In Plaintiffs shall be assigned one (1) point for each week worked during the Relevant Statutory Period as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, and as a Senior Network Computing Analyst.

(3) Opt-In Plaintiffs shall also be assigned one half (.5) of a point for each week worked as a Senior Staff Specialist during the Relevant Statutory Period.

(4) To calculate the portion of the Net Settlement Fund that shall be apportioned to each Prospective Collective Member and Opt-In Plaintiff ("Allocated

Amount"), the Claims Administrator shall (i) determine the sum of the total number of points for all Participating Collective Members and and Opt-In Plaintiffs; (ii) divide the Net Settlement Fund by the sum calculated in subsection (i) of this Paragraph to find the amount allocated to each point; and (iii) multiply the amount allocated to each point by the number of points assigned to each Participating Collective Member and  Opt-In Plaintiff  to determine such Prospective Collective Member's and Opt-In Plaintiff's Allocated Amount.

**6.   HOW DO I MAKE A CLAIM?**

To be eligible for a distribution from the settlement fund, you must timely complete and return the enclosed Claim Form according to instructions provided on the form.  The Claim Form must be personally filled out by the current or former worker who seeks to participate in the Settlement or someone authorized under the law to act on his or her behalf.

In order to participate in the Lawsuit and receive a payment under the Settlement, you must complete, sign and mail, fax, or e-mail the enclosed Claim Form to the Settlement Claims Administrator at the address listed below.  Completed Claim Forms can only be accepted by the Settlement Claims Administrator, and not by any attorneys or the Court. **Your Claim Form must be postmarked or received by facsimile or email no later than [INSERT DATE 60 DAYS AFTER DATE NOTICE WAS SENT].** <u>Late or incomplete Claim Forms will not be accepted by the claims administrator.</u>

The **Settlement Claims Administrator** – to whom all forms and questions should be directed – is:

**M&T IT  Settlement**
**c/o ILYM GROUP, Inc. – XXXX**
**P.O. Box XXXX**
**Faribault, MN 55021-XXXX**
**Phone: (866) XXX-XXXX**
**Facsimile: (866) XXX-XXXX**
**<E-MAIL>**

Within forty (40) days of **[60 DAYS FROM DATE OF MAILING]**, the Settlement Claims Administrator shall issue settlement checks to Participating Collective Members who properly returned Claim Forms. You will have One Hundred Twenty (120) calendar days after the date your settlement check is issued to cash your settlement check.

**7.   WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?**

If you return a Claim Form and endorse and negotiate your settlement check, you will <u>**fully release**</u> Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the

"Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under state and local law, including claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any weeks worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist or as a Senior Network Computing Analyst.

If you do not want to participate in, or be bound by, the Settlement, you should not return the Claim Form.

**8.     DO I HAVE A LAWYER IN THIS CASE?**

The law firms of Fitapelli & Schaffer, LLP, 28 Liberty Street, New York, NY 10005 and Bruckner Burch PLLC, 8 Greenway Plaza, Ste 1500, Houston, Texas 77046, have been designated as legal counsel to represent you and the other Collective Members.  You will not be charged separately for these lawyers. Their fees will be paid from the total settlement fund (see section 5, above).

**9.     TAX TREATMENT**

For tax purposes, 50% of each Participating Collective Member's individual settlement payment will be considered back wages subject to lawful deductions and W-2 reporting. For this amount, normal payroll taxes and withholdings will be deducted from your settlement check pursuant to city, state and federal law. The remaining 50% of each Participating Collective Member's individual settlement payment will be considered liquidated damages and interest subject to 1099 reporting as non-wage income.  At the end of the calendar year, the Settlement Claims Administrator will issue each Participating Collective Member who has cashed a check an IRS Form W-2 for that portion of the Participating Collective Member's settlement payment which is being treated as wages, and an IRS Form 1099 for the portion of the Participating Collective Member's settlement payment which is being treated as liquidated damages and interest. Other than the Defendant's payment of the employer's share of payroll taxes, Participating Collective Members are responsible for the appropriate payment of any taxes on the payments they receive.

*Plaintiffs' Counsel and Defendant's Counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.*

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to advise the trustee of this Settlement.  You should check with your bankruptcy counsel regarding this.

**10.     NON-RETALIATION**

M&T may not retaliate against you in your employment if you choose to join this settlement.

**11.     WHAT IF I HAVE ADDITIONAL QUESTIONS?**

If you have additional questions about this Notice or want more information, you can contact Frank J. Mazzaferro, Esq., Fitapelli & Schaffer, LLP, 28 Liberty Street, 30th Floor, New York, NY 10005, (212) 300-0375, info@fslawfirm.com

By Order of the Court
Dated:  **INSERT DATE**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JAMES SCHAEFER, JR., on behalf of himself
and all others similarly situated,

                 **Plaintiff,**

      **-against-**

**M&T BANK CORPORATION,**

                 **Defendant.**

No. 14 Civ. 6622 (PGG)

## CLAIM FORM AND CONSENT TO JOIN SETTLEMENT FOR PROSPECTIVE COLLECTIVE MEMBER

**The form must be returned to the Settlement Claims Administrator so that it is postmarked or received by facsimile or email by [60 DAYS FROM DATE OF MAILING].**

       I hereby consent and opt-in to become a plaintiff for settlement purposes in a lawsuit brought under the Fair Labor Standards Act ("FLSA"), *Schaefer v. M&T Bank*, No. 14 Civ. 6622 (PGG). I consent and agree to be bound by any adjudication of this action by the Court. I further agree to be bound by the collective action settlement approved by the Court. I hereby designate the law firms of Fitapelli & Schaffer, LLP and Bruckner Burch PLLC to represent me in this action. I understand that if I return this Claim Form and endorse and negotiate my settlement check, I fully release Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under state and local law, including claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any weeks I worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, or as a Senior Network Computing Analyst.

_____   _____   _____

Name (print)                   Signature                   Date

_____   _____

Street Address                Telephone Number

_____   _____

City, State and Zip Code       Email Address

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JAMES SCHAEFER, JR., on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | No. 14 Civ. 6622 (PGG) |
| **-against-** | |
| **M&T BANK CORPORATION,** | |
| **Defendant.** | |

**OFFICIAL COURT NOTICE OF PROPOSED COLLECTIVE
ACTION SETTLEMENT AND DISMISSAL OF ACTION TO OPT-IN PLAINTIFFS**

**YOU MAY BE ENTITLED TO A PAYMENT RESULTING FROM THE SETTLEMENT
OF A COLLECTIVE ACTION LAWSUIT.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- A settlement (the "Settlement") has been reached in the lawsuit currently pending in the United States District Court for the Southern District of New York, entitled *Schaefer v. M&T Bank Corporation* (the "Lawsuit").  The Lawsuit alleges that Manufacturers and Traders Trust Company ("M&T" or "Defendant") misclassified certain Information Technology infrastructure employees as exempt from overtime under federal and state laws and failed to pay them overtime compensation for all hours worked in excess of 40 per workweek.

- Based on the formula in the settlement agreement discussed in section 5 below, the total individual settlement amount you will be entitled to receive is estimated to be approximately **$_____**, subject to deductions for applicable taxes.

- **You are receiving this Notice because you previously signed a Consent to Join the Lawsuit and are therefore an "Opt-In Plaintiff"** who was employed by M&T in New York on or after August 19, 2008 through December 31, 2017, or in states other than New York on or after June 4, 2012 through December 31, 2017 ("Relevant Statutory Period").

- As an Opt-In Plaintiff, you do not have to do anything to receive your settlement payment.  Checks will be mailed to Opt-In Plaintiffs by **[date checks issued].**

## BASIC INFORMATION

**1.      WHAT IS A COLLECTIVE ACTION?**

In a "Collective Action," one or more people called representative plaintiffs sue on behalf of people who have similar claims.  However, the other employees who have similar claims do not become part of the Collective Action until they "opt in" to the Collective Action. You previously joined the case as an Opt-In Plaintiff and do not need to do anything to receive your settlement payment.

**2.      WHAT IS THE PURPOSE OF THIS NOTICE?**

The purpose of this Notice is to inform you of your rights under the settlement agreement resolving the Lawsuit.

"Prospective Collective Members," or individuals who have not already opted into the lawsuit, have received a separate notice giving them the opportunity to return a claim form and join the case for settlement purposes by **[bar date].** You have already opted into the Collective Action and do not need to do anything to receive your settlement payment.

**3.      WHAT IS THIS CASE ABOUT?**

The Lawsuit alleges that Defendant violated federal and state labor laws by failing to provide Prospective Collective Members and Opt-In Plaintiffs with overtime pay.

Defendant denies these allegations and believes that Prospective Collective Members and Opt-In Plaintiffs received all monies to which they were entitled.  However, to avoid the burden, expense, and uncertainty of continuing litigation, the parties have agreed to this Settlement.

**4.      WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?**

The Parties have agreed to settle this matter for the total sum of Two Million Four Hundred Ninety Thousand Dollars and Zero Cents ($2,490,000.00).

**5.      HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?**

Defendant will pay up to $2,490,000.00 to settle the Lawsuit ("Gross Settlement Fund"). The following payments and expenses will be deducted from the Gross Settlement Fund prior to the allocation of the settlement funds to Collective Members:

- Service Award:  The Court has approved Service Award payments in the aggregate amount of $_____.

- Attorneys' Fees and Costs:  The Court has approved payment of attorneys' fees of $_____ to Plaintiffs' Counsel plus an additional $_____ for their actual expenses and costs.

- Administration Expenses:   $_____ will be paid the Settlement Claims Administrator to cover any costs associated with the administration of notice to the Collective Members and the issuance of payments to Participating Collective Members.

After these deductions, the Settlement Claims Administrator shall allocate the remaining settlement funds (the "Net Settlement Fund") to Prospective Collective Members and Opt-In Plaintiffs as follows:

(1)  Prospective Collective Members shall be assigned one (1) point for each week worked during the Relevant Statutory Period as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, and as a Senior Network Computing Analyst.

(2)  Opt-In Plaintiffs shall be assigned one (1) point for each week worked during the Relevant Statutory Period as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, and as a Senior Network Computing Analyst.

(3)  Opt-In Plaintiffs shall also be assigned one half (.5) of a point for each week worked as a Senior Staff Specialist during the Relevant Statutory Period.

(4)  To calculate the portion of the Net Settlement Fund that shall be apportioned to each Prospective Collective Member and Opt-In Plaintiff ("Allocated Amount"), the Claims Administrator shall (i) determine the sum of the total number of points for all Participating Collective Members and Opt-In Plaintiffs; (ii) divide the Net Settlement Fund by the sum calculated in subsection (i) of this Paragraph to find the amount allocated to each point; and (iii) multiply the amount allocated to each point by the number of points assigned to each Prospective Collective Member and Opt-In Plaintiff to determine such Prospective Collective Member's and Opt-In Plaintiff's Allocated Amount.

## 6.    WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?

If you endorse and negotiate your settlement check, you will **fully release** Manufacturers and Traders Trust Company and M&T Bank Corporation, and their parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), from any and all wage and hour claims under the Fair Labor Standards Act and under  state and local law, including claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, up through December 31, 2017, for any

weeks worked as a Network Computing Analyst I, as a Network Computing Analyst II, as a Staff Specialist, as a Senior Network Computing Analyst,  or as a Senior Staff Specialist.

If you do not want to participate in, or be bound by, the Settlement, you should not endorse and negotiate your settlement check. However, as part of the Settlement, the Lawsuit has been discontinued.  Within forty (40) days of **[60 DAYS FROM DATE OF MAILING]**, the Settlement Claims Administrator shall issue settlement checks.  You will have One Hundred Twenty (120) calendar days after the date your settlement check is issued to cash your settlement check.

## 7.    DO I HAVE A LAWYER IN THIS CASE?

The law firms of Fitapelli & Schaffer, LLP, 28 Liberty Street, New York, NY 10005 and Bruckner Burch PLLC, 8 Greenway Plaza, Ste 1500, Houston, Texas 77046, have been designated as legal counsel to represent you and the other Collective Members.  You will not be charged separately for these lawyers.  Their fees will be paid from the total settlement fund (see section 5, above).

## 8.    TAX TREATMENT

For tax purposes, 50% of each Opt-In Plaintiff's individual settlement payment will be considered back wages subject to lawful deductions and W-2 reporting.  For this amount, normal taxes and withholdings will be deducted from your settlement check pursuant to city, state and federal law. The remaining 50% of each Opt-In Plaintiff's individual settlement payment will be considered liquidated damages and interest subject to 1099 reporting as non-wage income.  At the end of the calendar year, the Settlement Claims Administrator will issue each Opt-In Plaintiff who has cashed a check an IRS Form W-2 for that portion of the Opt-In Plaintiff's settlement payment which is being treated as wages, and an IRS Form 1099 for the portion of the Opt-In Plaintiff's settlement payment which is being treated as liquidated damages and interest.  Other than the Defendant's payment of the employer's share of payroll taxes, Opt-In Plaintiff are responsible for the appropriate payment of any taxes on the payments they receive.

*Plaintiffs' Counsel and Defendant's Counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.*

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to advise the trustee of this Settlement.  You should check with your bankruptcy counsel regarding this.

## 9.    NON-RETALIATION

M&T may not retaliate against you in your employment if you choose to join this

settlement.

**10.      WHAT IF I HAVE ADDITIONAL QUESTIONS?**

If you have additional questions about this Notice or want more information, you can contact Frank J. Mazzaferro, Esq., Fitapelli & Schaffer, LLP, 28 Liberty Street, 30th Floor, New York, NY 10005, (212) 300-0375, info@fslawfirm.com

By Order of the Court
Dated:  **INSERT DATE**

# EXHIBIT E

Schaefer, Jr. v. M T Bank Corporation 14-cv-06622

Opt-In Plaintiffs

| First Name | Last Name |
|------------|-----------|
| Joseph | Alliegro |
| Theresa | Avery-Scigaj |
| Luke | Bauerlein |
| William | Burke |
| William | Collier |
| Shawn | Delong |
| David | Fitzsimmons |
| Michael | Germony |
| Michael | Hoenow |
| Theodore | Karapalides |
| Ronald | Michalski |
| Susan | Miller |
| Kyle | Obear |
| Patrick | O'Neil |
| Robert | Phillips |
| Justin | Priebe |
| Mitchell | Roberts |
| Edward | Sadler |
| James | Schaefer |
| Gregory | Seman |
| Joseph | Spinella |

# EXHIBIT F

Schaefer, Jr. v. M T Bank Corporation 14-cv-06622
Propspective Collective Members

| First Name | Last Name |
|---|---|
| Lawrence | Acee |
| Heath | Allen |
| Joan | Amico |
| Sandra | Anaya |
| Richard | Andreyo |
| Patrick | Argy |
| Susan | Arnold |
| Eric | Ayotte |
| Robert | Ballacchino |
| Victoria | Banas |
| James | Bandinelli |
| Alex | Barberio |
| Anthony | Barone |
| Jonathan | Barr |
| Harold | Bell |
| Christopher | Bennett |
| Gerald | Black |
| Vanessa | Blattner |
| Celestine | Bowe |
| Gary | Bradley |
| Leandra | Braham |
| Joseph | Brocki |
| Judith | Brown |
| Michael | Brown |
| Scott | Brown |
| Denis | Bruno |
| Michele | Bufalino |
| Steven | Burton |
| Francisco | Butera |
| David | Campbell |
| Gregory | Carrico |
| Michael | Cawby |
| Kathleen | Chapman |
| Michael | Cichocki |
| Matthew | Coia |
| Coleen | Criswell |
| Elizabeth | Crocker |
| Thomas | Cronin |
| Stephen | Cross |
| Joseph | Cultrara |
| Joseph | Cumbo |
| Deborah | Cummings |
| John | Custodi |
| Dawn | Delaney |
| Donald | Dessert |
| Charles | Dickson |
| Jacquelyn | Dickson |

Schaefer, Jr. v. M T Bank Corporation 14-cv-06622
Propspective Collective Members

| | |
|---|---|
| Keith | Diggins |
| Katie | Dowling |
| Darrel | Dracup |
| Jeremy | Dracup |
| Carl | Drechsel |
| Christian | Drechsel |
| Thea | Epps |
| Kelly | Faddoul-Rutkowski |
| Mohammad | Faruqui |
| Melanie | Fels |
| Ryan | Ferger |
| Gloria | Ferrara |
| Jeromy | Fincher |
| Jeffrey | Fischer |
| Timothy | Flammger |
| Ryan | Fleischman |
| Rodney | Fodor |
| Mark | Fuller |
| Richard | Fusani |
| Justin | Gangl |
| Grant | Garrity |
| Daniel | George |
| Scott | George |
| Alexander | Gerlitz |
| Brian | Glass |
| Orlando | Gonzalez |
| Darlene | Govenettio |
| David | Grasso |
| Earl | Grove |
| Nathaniel | Guinn |
| Manish | Gupta |
| Carol | Haack |
| William | Hammann |
| Scott | Handschumaker |
| Mark | Heick |
| Paula | Henderson |
| Holly | Henderson (Solcum) |
| Michelle | Hennigan |
| Clinton | Herzog |
| Ann | Higgins |
| Heather | Higgins |
| Gregory | Hill |
| Steven | Hofbauer |
| Michael | Hoolahan |
| David | Hughes |
| William | Jackson |
| David | Jazwiecki |
| Richard | Jesse |

2

Schaefer, Jr. v. M T Bank Corporation 14-cv-06622
Propspective Collective Members

| Levette | Jones |
|---------|-------|
| Tina | Kantorowicz |
| Patrick | Kell |
| Robert | Kerr |
| Edward | Kinaga |
| Carlton | Koester |
| Derek | Kokotajlo |
| Brian | Konieczka |
| Keith | Kotlarski |
| Randy | Kromer |
| Steven | Kulczyk |
| Barry | Kumro |
| Rory | Lalor-Molero |
| Joseph | Lavigne |
| Kevin | Lawrence |
| Michael | Leonis |
| Jason | Linton |
| James | Littleton |
| Nicholas | Lombardo |
| Benjamin | Lugo |
| Jason | Lyons |
| William | MacDonell |
| Danny | Maines |
| David | Majetic |
| Paul | Manson |
| Theresa | Marasco |
| Curt | Martell |
| Jaime | Masocco |
| Maryanne | Mazzarella |
| Richard | McDermott |
| Nicholas | McFadden |
| Shawnterio | McIver |
| Paul | Mecozzi |
| Kevin | Meetze |
| Robert | Messing |
| Justin | Miller |
| Michael | Miller |
| David | Mincel |
| Heather | Missel (Dieterle) |
| Joseph | Mitri |
| Jim | Mize |
| Kathleen | Moppert |
| Brent | Murphy |
| Lawrence | Myers |
| Joel | Nace |
| Joshua | Nash |
| Joel | Nentwich |
| Antonio | Nero |

3

Schaefer, Jr. v. M T Bank Corporation 14-cv-06622
Propspective Collective Members

| | |
|---|---|
| Gregory | Okerlund |
| Andrew | Onan |
| David | Paar |
| Mark | Paeplow |
| Donna | Palmer |
| Donald | Paluch |
| Russell | Panepinto |
| Daniel | Paugh |
| John | Peluso |
| Catherene | Perez |
| Alex | Perez |
| Janet | Pfeffer |
| Wesley | Piper |
| Gary | Pominville |
| Philip | Porto |
| Dawn | Pytlik |
| Tina | Rath |
| Thomas | Reed |
| Michael | Romansky |
| Michael | Root |
| Kenneth | Rowekamp |
| Paul | Sanders |
| Paul | Santodonato |
| Karl | Schmidt |
| Keith | Seeley |
| Dana | Sequira |
| Christopher | Sheets |
| Andrew | Sippel |
| Aaron | Slosman |
| Michael | Smeal |
| Raymond | Smith |
| Eugene | Smith |
| Henry | Souliske |
| Melissa | Sparacino |
| Carla | Speranza |
| Thomas | Stahl |
| Ben | Stanley |
| Douglas | Stearns |
| Karl | Steblein |
| David | Steinel |
| Mark | Stevens |
| Ronald | Stipp |
| John | Stockman |
| Stephen | Strimple |
| Zachary | Stringham |
| Megan | Strong |
| Kathleen | Sweda |
| Tommy | Sweeney |

4

Schaefer, Jr. v. M T Bank Corporation 14-cv-06622
Propspective Collective Members

| | |
|---|---|
| Marc | Tessier |
| Murali | Thoota |
| Shawn | Tierney |
| Michael | Todaro |
| Steve | Toole |
| Jerome | Topolski |
| Allen | Townsend |
| Howard | Turk |
| Richard | Tusznio |
| Jason | Van Cleve |
| Brian | Veirs |
| Zana | Vernon |
| Ashish | Vikram |
| Brian | Wagner |
| Lauren | Warren |
| Auzandaa | Washington |
| Lawrence | Washington |
| Lynn | Weber-Wall |
| Robert | Williams |
| Brian | Williams |
| David | Windsor |
| Randy | Winemiller |
| Debra | Wolf |
| David | Wolf |
| Patrick | Zaffram |
| John | Zajac |
| David | Zannin |
| Paul | Zoda |

5

# EXHIBIT G

<u>**Exhibit G to Collective Action Settlement Agreement**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

**JAMES SCHAEFER, JR., on behalf of
himself and all others similarly situated,**

           **Plaintiff,**

      **-against-**

**M&T BANK CORPORATION,**

         **Defendant.**

---------------------------------------------------------------

No. 14 Civ. 6622 (PGG)

<u>**WAIVER AND RELEASE AGREEMENT**</u>

      This Waiver and Release (the "Agreement") is entered into by and between William Collier ("Collier") and Manufacturers and Traders Trust Company ("M&T"), which was named as "M&T Bank Corporation" in the Complaint (collectively, "M&T" or "Defendant"). M&T and Collier are referred to collectively as the "Parties."

      **WHEREAS**, on August 19, 2014, Named Plaintiff James Schaefer, Jr. filed a Complaint in United States District Court for the Southern District of New York (the "Court") on behalf of himself and others alleged to be similarly situated, asserting claims against Defendant under the Fair Labor Standards Act and New York Labor Law (the "Litigation" or the "Lawsuit");

      **WHEREAS**, on January 15, 2015, Collier opted-in to the Litigation by filing a consent to sue under the Fair Labor Standards Act;

      **WHEREAS**, James Schaefer, Jr., individually and on behalf of a settlement collective he seeks to represent, and M&T have agreed to settle the Litigation on the terms and conditions set forth in a Settlement Agreement and Release (the "Collective Action Settlement Agreement"), to which this Agreement is an exhibit;

      **WHEREAS**, under Section 4.3 of the Collective Action Settlement Agreement, Collier, through counsel, will apply to the Court to receive a Service Award of $10,000.00 (the "Service Award");

      **WHEREAS**, M&T and its parents, subsidiaries, affiliates, and employees deny all liability in this action, and M&T Bank Corporation denies that it is or was an employer of Collier;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree as follows.

1.     **Incorporation**.  The "Whereas" clauses set forth above are incorporated into this Agreement and are material terms of this Agreement.

2.     **Approval Order**.  The "Approval Order" means the Order and Final Judgment of Dismissal With Prejudice attached to the Collective Action Settlement Agreement as Exhibit A, to the Settlement Agreement approving the terms and conditions of the Collective Action Settlement Agreement.

3.     **Effective Date**.  The "Effective Date" of this Agreement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of the Approval Order, if there are no appeals; or (b) if there is an appeal of the Court's Approval Order, the day after all appeals are finally resolved in favor of final approval.

4.     **Payment and Allocation.**  Pursuant to Section 4.3 of the Collective Action Settlement Agreement, Collier, through counsel, will apply to the Court to receive the Service Award.  If the Court approves the Service Award, the Service Award shall be paid to Collier from the Qualified Settlement Fund forty-eight (48) days after the Effective Date.  The Service Award shall be allocated 100% to W-2 wage payments, subject to withholdings.

5.     **Wage-and-Hour Release**.  In consideration for the Service Award approved, accepted, and received, Collier, on behalf of himself and his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), of and from any and all wage and hour claims under the Fair Labor Standards Act and under state and local law, including, without limitation, claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, which he may have against any of the Releasees up through the date of court approval of the Collective Action Settlement.

6.     **General Release**.  In consideration for the Service Award approved, accepted, and received, Collier, on behalf of himself and his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, judgments, obligations, claims, charges, complaints, appeals, and demands whatsoever, in law or equity, which he may have against any of the Releasees as of the date of  his execution of this Agreement signature, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq; the New York Labor Law; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.;

2

the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code including, without limitation, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-and-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of his execution of this Agreement.

**7.    Employee Rights**.  Nothing in this Agreement limits Collier's right to provide information, assist, or participate in any investigation, proceeding, or litigation concerning any administrative claim with any government agency under any law that protects such rights, or to file such a claim.  However, Collier agrees to forfeit any money or other personal benefit from any such claim or litigation arising out of any incident or events that occurred prior to the date of the Court's approval of the Collective Action Settlement Agreement, except if prohibited by law.

**8.    Covenant Not to Sue**.  Collier promises and covenants not to sue any of the Releasees for any claims released in paragraphs 5-6 of this Agreement, to the fullest extent allowed by law. This promise not to sue is separate from, and in addition to, Collier's release of claims described in paragraphs 5-6 of this Agreement.  This covenant not to sue does not apply to a claim under the Age Discrimination in Employment Act.

**9.    Approval by the Court**.  If the Court denies Collier's request for the Service Award, this Agreement will be void, and Collier shall only release claims pursuant to Section 5.1(D)-(E) of the Collective Action Settlement Agreement.

**10.   Tax Treatment**.  Collier agrees to indemnify M&T for any unpaid taxes, penalties, interest, attorneys' fees, or costs concerning the tax treatment of any pay/benefits provided under this Agreement and the Collective Action Settlement Agreement that are determined by the relevant authorities to be Collier's responsibility.

**11.   No Admission**.  Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns, deny all liability in the Lawsuit. M&T Bank Corporation denies that it is or was an employer of Collier.  Nothing relating related to this Agreement, shall be cited as, construed as, construed to be, admissible as, or deemed an admission by Manufacturers and Traders Trust Company or M&T Bank Corporation of any liability or wrongdoing.

**12.  Drafting**.  This Agreement will be interpreted as a whole, without regard to its drafter.

**13.  Applicable Law**.  Where not superseded by federal law, this Agreement will be interpreted under the laws of the state of New York.

**14.  Severability/Non-Waiver**.  A court that finds any part of this Agreement to be unenforceable should modify that part of the Agreement the minimal amount required to be enforceable.  A court that finds any such part of this Agreement incapable of being so modified should sever it and enforce the remainder of this Agreement.  A party's decision not to enforce this Agreement is not a waiver of any future violation.

**15.  Non-Publication**.  Collier and his counsel agree to make no statement to the media relative to this settlement and agree to make no press or media release and no statements on the Internet or social media relative to this settlement.

**16.  Voluntary Agreement**.  The Parties represent and warrant that they entered into this Agreement voluntarily, of their own free will, without any pressure or coercion, based on their own judgment and the advice of their own attorneys.  The Parties further represent that they are legally competent to execute this Agreement and have been provided a complete copy of this Agreement.

**17.  Entire Agreement**.  In addition to the Collective Action Settlement Agreement, this Agreement is the complete understanding between the Parties.

**18.  Execution in Counterparts; Force and Effect**.  The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.  Any signature made and transmitted by facsimile, email, or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile or email.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION AND VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, COLLIER FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS ATTORNEYS, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE MAY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**WE AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**


Mar 26, 2018

_____
         Date

*William Collier*
William Collier (Mar 26, 2018)

By: _____
              William Collier


Manufacturers and Traders Trust Company


_____

       Date

By: _____
          Name:
          Title:

14710005v1

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION AND VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, COLLIER FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS ATTORNEYS, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE MAY HAVE OR MIGHT HAVE AGAINST RELEASEES.

WE AGREE TO THESE TERMS.

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.


_____          By: _____
            Date                          William Collier


                                 Manufacturers and Traders Trust Company

3 | 2                             By: _____
_____               Name:
            Date                       Title:


                                  5

**Exhibit G to Collective Action Settlement Agreement**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**JAMES SCHAEFER, JR., on behalf of**
**himself and all others similarly situated,**

           **Plaintiff,**

    **-against-**

**M&T BANK CORPORATION,**

           **Defendant.**

No. 14 Civ. 6622 (PGG)

## WAIVER AND RELEASE AGREEMENT

This Waiver and Release (the "Agreement") is entered into by and between Mitchell Roberts ("Roberts") and Manufacturers and Traders Trust Company ("M&T"), which was named as "M&T Bank Corporation" in the Complaint (collectively, "M&T" or "Defendant"). M&T and Roberts are referred to collectively as the "Parties."

**WHEREAS**, on August 19, 2014, Named Plaintiff James Schaefer, Jr. filed a Complaint in United States District Court for the Southern District of New York (the "Court") on behalf of himself and others alleged to be similarly situated, asserting claims against Defendant under the Fair Labor Standards Act and New York Labor Law (the "Litigation" or the "Lawsuit");

**WHEREAS**, on January 26, 2015, Roberts opted-in to the Litigation by filing a consent to sue under the Fair Labor Standards Act;

**WHEREAS**, James Schaefer, Jr., individually and on behalf of a settlement collective he seeks to represent, and M&T have agreed to settle the Litigation on the terms and conditions set forth in a Settlement Agreement and Release (the "Collective Action Settlement Agreement"), to which this Agreement is an exhibit;

**WHEREAS**, under Section 4.3 of the Collective Action Settlement Agreement, Roberts, through counsel, will apply to the Court to receive a Service Award of $10,000.00 (the "Service Award");

**WHEREAS**, M&T and its parents, subsidiaries, affiliates, and employees deny all liability in this action, and M&T Bank Corporation denies that it is or was an employer of Roberts;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree as follows.

**1.    Incorporation**.  The "Whereas" clauses set forth above are incorporated into this Agreement and are material terms of this Agreement.

**2.    Approval Order**.  The "Approval Order" means the Order and Final Judgment of Dismissal With Prejudice attached to the Collective Action Settlement Agreement as Exhibit A, to the Settlement Agreement approving the terms and conditions of the Collective Action Settlement Agreement.

**3.    Effective Date**.  The "Effective Date" of this Agreement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of the Approval Order, if there are no appeals; or (b) if there is an appeal of the Court's Approval Order, the day after all appeals are finally resolved in favor of final approval.

**4.    Payment and Allocation.**  Pursuant to Section 4.3 of the Collective Action Settlement Agreement, Roberts, through counsel, will apply to the Court to receive the Service Award.  If the Court approves the Service Award, the Service Award shall be paid to Roberts from the Qualified Settlement Fund forty-eight (48) days after the Effective Date.  The Service Award shall be allocated 100% to W-2 wage payments, subject to withholdings.

**5.    Wage-and-Hour Release**.  In consideration for the Service Award approved, accepted, and received, Roberts, on behalf of himself and his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), of and from any and all wage and hour claims under the Fair Labor Standards Act and under state and local law, including, without limitation, claims for unpaid overtime wages and recordkeeping claims, claims for failure to provide wage notices and wage statements, interest on such claims, and penalties, liquidated damages, and attorneys' fees and costs related to such claims, which he may have against any of the Releasees up through the date of court approval of the Collective Action Settlement.

**6.    General Release**.  In consideration for the Service Award approved, accepted, and received, Roberts, on behalf of himself and his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees"), of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, judgments, obligations, claims, charges, complaints, appeals, and demands whatsoever, in law or equity, which he may have against any of the Releasees as of the date of  his execution of this Agreement signature, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq; the New York Labor Law; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.;

the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code including, without limitation, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-and-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of his execution of this Agreement.

**7.** **Employee Rights**. Nothing in this Agreement limits Roberts's right to provide information, assist, or participate in any investigation, proceeding, or litigation concerning any administrative claim with any government agency under any law that protects such rights, or to file such a claim. However, Roberts agrees to forfeit any money or other personal benefit from any such claim or litigation arising out of any incident or events that occurred prior to the date of the Court's approval of the Collective Action Settlement Agreement, except if prohibited by law.

**8.** **Covenant Not to Sue**. Roberts promises and covenants not to sue any of the Releasees for any claims released in paragraphs 5-6 of this Agreement, to the fullest extent allowed by law. This promise not to sue is separate from, and in addition to, Roberts's release of claims described in paragraphs 5-6 of this Agreement. This covenant not to sue does not apply to a claim under the Age Discrimination in Employment Act.

**9.** **Approval by the Court**. If the Court denies Roberts's request for the Service Award, this Agreement will be void, and Roberts shall only release claims pursuant to Section 5.1(D)-(E) of the Collective Action Settlement Agreement.

**10.** **Tax Treatment**. Roberts agrees to indemnify M&T for any unpaid taxes, penalties, interest, attorneys' fees, or costs concerning the tax treatment of any pay/benefits provided under this Agreement and the Collective Action Settlement Agreement that are determined by the relevant authorities to be Roberts's responsibility.

**11.** **No Admission**. Manufacturers and Traders Trust Company and M&T Bank Corporation, and their current and former parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns, deny all liability in the Lawsuit. M&T Bank Corporation denies that it is or was an employer of Roberts. Nothing relating related to this Agreement, shall be cited as, construed as, construed to be, admissible as, or deemed an admission by Manufacturers and Traders Trust Company or M&T Bank Corporation of any liability or wrongdoing.

**12.  Drafting**.  This Agreement will be interpreted as a whole, without regard to its drafter.

**13.  Applicable Law**.  Where not superseded by federal law, this Agreement will be interpreted under the laws of the state of New York.

**14.  Severability/Non-Waiver**.  A court that finds any part of this Agreement to be unenforceable should modify that part of the Agreement the minimal amount required to be enforceable.  A court that finds any such part of this Agreement incapable of being so modified should sever it and enforce the remainder of this Agreement.  A party's decision not to enforce this Agreement is not a waiver of any future violation.

**15.  Non-Publication**.  Roberts and his counsel agree to make no statement to the media relative to this settlement and agree to make no press or media release and no statements on the Internet or social media relative to this settlement.

**16.  Voluntary Agreement**.  The Parties represent and warrant that they entered into this Agreement voluntarily, of their own free will, without any pressure or coercion, based on their own judgment and the advice of their own attorneys.  The Parties further represent that they are legally competent to execute this Agreement and have been provided a complete copy of this Agreement.

**17.  Entire Agreement**.  In addition to the Collective Action Settlement Agreement, this Agreement is the complete understanding between the Parties.

**18.  Execution in Counterparts; Force and Effect**.  The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.  Any signature made and transmitted by facsimile, email, or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile or email.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION AND VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, ROBERTS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS ATTORNEYS, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE MAY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**WE AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**


Mar 26, 2018

_____
Date

_Mitchell Roberts_
Mitchell Roberts (Mar 26, 2018)
By: _____
Mitchell Roberts


Manufacturers and Traders Trust Company


_____
Date

By: _____
Name:
Title:

5

14710005v1

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE
PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE
SETTLEMENT SUMS AND OTHER CONSIDERATION AND VOLUNTARY
BENEFITS SET FORTH IN THIS AGREEMENT, ROBERTS FREELY AND
KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION
WITH HIS ATTORNEYS, ENTERS INTO THIS AGREEMENT INTENDING TO
WAIVE, SETTLE AND RELEASE ALL CLAIMS HE MAY HAVE OR MIGHT
HAVE AGAINST RELEASEES.

WE AGREE TO THESE TERMS.

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS
SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.


_____          By: _____
             Date                         Mitchell Roberts


                                 Manufacturers and Traders Trust Company

3/28/2018
            Date                 By: _____
                                 Name:
                                 Title:

I4710005v1